David Franklin STONE, Appellant,

v.

The STATE of Texas, Appellee.

No. 62744.

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 11, 1981.

Rehearing Denied March 11, 1981.

Weldon Holcomb, Tyler, for appellant.

Hunter B. Brush, Dist. Atty., Bill Saban, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of murder. The punishment is imprisonment for forty years.

The appellant contends that the trial court committed reversible error in overruling his motion to suppress an incriminating response and statements he made while in custody and out of the presence of his retained counsel. The appellant contends that the testimony was inadmissible because the State failed to prove his incriminating response was given after a knowing and intelligent waiver of his right to have counsel present during questioning. For the reasons which will be stated, we reverse. Our disposition of the case makes it unnecessary to discuss the appellant's other contention.

On the evening of July 7, 1977, the appellant, accompanied by his attorney the Honorable Weldon Holcomb, surrendered himself to Chief Deputy Sheriff Jim Collins at the Smith County Sheriff's Office. Holcomb told Collins that he represented the appellant and that the appellant had been involved in a homicide. After Collins advised the appellant of his rights as required by Art. 38.22, V.A.C.C.P. and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16

L.Ed.2d 694 (1966), and the appellant signed an acknowledgment of the warning, Holcomb stated that the appellant did not wish to make a statement, and Collins agreed to Holcomb's request that the appellant not be interviewed or interrogated out of Holcomb's presence. This agreement was made with the appellant present. Holcomb then disclosed that the victim was Vicky Gill, and drew a map showing the probable location of the body. The appellant was placed in jail, and Collins, accompanied by officers and media personnel, began the search for the body. After they had looked in the wooded area indicated on the map for an hour and a half to two hours without success, Collins had Holcomb called at home to request his permission to bring the appellant out of jail to aid in the search. Collins was informed that Holcomb refused to agree to this request. Collins then called A. D. Clark, III, the District Attorney. When Clark joined the searchers, Collins told him of the circumstances of appellant's surrender, and that Holcomb, the appellant's retained counsel, had refused requested permission to bring appellant out to aid the searchers. Both Collins and Clark testified that Clark was not informed of the agreement not to question the appellant. Clark ordered Deputies Miles and Fleming to bring the appellant to the scene, and Collins instructed them not to speak with the appellant. Clark did not attempt to inform Holcomb of this action, or to otherwise secure Holcomb's presence.

Deputy Miles testified at the hearing on the motion to suppress that the only remark either officer made to the appellant was, "David, come go with us"; that the appellant was not asked at any time before or during the trip if he wanted his counsel present; that no conversation whatever occurred during the fifteen minute ride to the scene. According to Clark's testimony at the hearing, the appellant was brought to the search area at approximately 12:30 a. m. Because there were between five and ten armed officers present, Clark asked that appellant's handcuffs be removed. Clark introduced himself, advised the appellant of his rights, and "asked him if he

wanted to waive his [*Miranda*] rights ... exactly as the card is printed .... [T]he last question was, do you wish to speak to me, or will you now talk to me without your lawyer being present ...." Clark further testified, "Following my conversation—my question to him, he asked, to the best of my recollection, what about ...." Clark responded by asking the appellant if he wanted to show the searchers where the body was. The appellant said the searchers were looking in the wrong place, told them the body was about half a mile further north, rode with them in Clark's jeep north along the road and showed them where to turn off. The appellant stayed by the jeep while the officers renewed their search, and found the body within two to three minutes. The appellant was then returned to the jail without making further statements.

The trial court, relying on *Williams v. State*, 566 S.W.2d 919 (Tex.Cr.App.1978), concluded that the appellant had made a voluntary waiver of his right to counsel guaranteed by the Sixth Amendment and overruled the motion to suppress the testimony concerning appellant's statements and actions at the scene of the search. The trial court stated no Fifth Amendment questions were involved absent any evidence of coercion. At trial Collins' testimony concerning these events was admitted over objection.

The appellant urges that the evidence in this case is insufficient to show he waived his right to counsel guaranteed by the Sixth Amendment to the United States Constitution, and therefore Collins' testimony concerning his incriminating response should not have been admitted. He relies on *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The State contends that there is sufficient evidence of a waiver of appellant's Sixth Amendment right to counsel, citing *Williams v. State*, supra.

In *Brewer v. Williams*, supra, the Supreme Court held that incriminating statements and evidence obtained from the defendant who had been charged with kidnapping were inadmissible because there was

no showing he had waived his Sixth Amendment right to counsel. In *Williams v. State,* supra, it was held that a confession by the defendant was admissible because there was sufficient evidence that the defendant who had been charged with murder had waived his Sixth Amendment right to counsel and his Fifth Amendment privilege against self-incrimination.

There has been some understandable confusion, shared by the trial court in this case, between the Sixth Amendment right to counsel, and the "right to counsel" discussed in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, since the trial of this case the Supreme Court in the recent decision of *Rhode Island v. Innis,* 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307 (1980), has clearly stated that these are two different rights, informed by different policies:

"Our decision in *Brewer* rested solely on the Sixth and Fourteenth Amendment right to counsel ... That right, as we held in *Massiah v. United States,* 377 U.S. 201, 206, [84 S.Ct. 1199, 1203, 12 L.Ed.2d 246], prohibits law enforcement officers from 'deliberately elicit[ing]' incriminating information from a defendant in the absence of counsel after a formal charge against the defendant has been filed. *By contrast, the right to counsel at issue in the present case is based not on the Sixth and Fourteenth Amendments, but rather on the Fifth and Fourteenth Amendments as interpreted in the Miranda opinion.* The definitions of 'interrogation' under the Fifth and Sixth Amendments, if indeed the term 'interrogation' is even apt in the Sixth Amendment context, are not necessarily interchangeable since the policies underlying the two constitutional protections are quite distinct."

[emphasis added]. See also *Carvey v. Le-Fevre,* 611 F.2d 19 (2d Cir. 1979); *State v. McConico,* 4 Kan.App.2d 420, 607 P.2d 93 (1980).

The Supreme Court has ruled that the Sixth Amendment right to counsel attaches "at or after the initiation of adversary criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1977). See also *Moore v. Illinois,* 434 U.S. 220, 226–227, 98 S.Ct. 458, 463–464, 54 L.Ed.2d 424, 432–433 (1977); *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424, 436 (1977); *United States v. Ash,* 413 U.S. 300, 303, n. 3, 93 S.Ct. 2568, 2570, 37 L.Ed.2d 619, 623 (1973); *Rhode Island v. Innis,* supra. Such "adversary proceedings" had been commenced against the defendants in both *Brewer v. Williams,* supra, and *Williams v. State,* supra.

It is not necessary to reach the issue in this case of whether in light of these decisions the appellant's Sixth Amendment right to counsel had attached at the time he made the incriminating response admitted against him; a review of the record convinces us that the State has not met its burden of proving that appellant waived the right to counsel, based on the Fifth Amendment as interpreted in the *Miranda* opinion.

■ The Supreme Court in *Miranda* held that the State may not use incriminating responses stemming from custodial interrogation unless it demonstrates the use of "procedural safeguards effective to secure the privilege against self-incrimination." Included in these safeguards is the warning that a defendant has the right to have counsel present at interrogation. The Court stated that "the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today." 384 U.S. at 469, 86 S.Ct. at 1625, 16 L.Ed.2d at 721.

Once the right to the presence of counsel is invoked, the subsequent procedure is also clearly stated:

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot ob-

tain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723.

■ By surrendering to the authorities in the company of his attorney, and advising them through his attorney that he did not wish to be questioned in the absence of his counsel, the appellant clearly invoked his *Miranda* right to have counsel present at a subsequent interrogation.

■ It is uncontroverted that his subsequent incriminating response was obtained while he was in police custody, when, three hours after his surrender he was brought handcuffed from the jail to the search site. That his response was obtained during interrogation is also clear: "interrogation" under *Miranda* includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. at 301, 100 S.Ct. at 1689, 64 L.Ed.2d at 308. The Court added "[b]y 'incriminating response' we refer to any response—whether inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial." *Id.* at n. 5. The District Attorney's question in this case was designed to and did elicit a response which the prosecution later did introduce at trial against the appellant.

Since the appellant was interrogated without the presence of an attorney despite his invocation of his right,

> "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self incrimination and his right to retained or appointed counsel . . . Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and had the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders."

*Miranda v. Arizona*, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. Accord, *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *McKittrick v. State*, 541 S.W.2d 177 (Tex.Cr.App. 1976).

■ The determination of whether the appellant knowingly and voluntarily decided to forgo his right to remain silent and to the assistance of counsel is based on the totality of the circumstances. *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Harville v. State*, 591 S.W.2d 864 (Tex.Cr.App.1979). An explicit waiver of the right to counsel, while it would be strong evidence is not essential to a finding of a valid waiver. *North Carolina v. Butler*, supra; *Harville v. State*, supra; *Moreno v. State*, 511 S.W.2d 273 (Tex.Cr. App.1974); *Thomas v. State*, 458 S.W.2d 817 (Tex.Cr.App.1970). The fact that an accused is already represented by counsel at the time the incriminating response is obtained will not automatically preclude a finding of waiver. See e. g., *McKittrick v. State*, supra, at 183: *Self v. State*, 513 S.W.2d 832 (Tex.Cr.App.1974); *Caraway v. State*, 489 S.W.2d 106 (Tex.Cr.App.1971); *Nash v. State*, 477 S.W.2d 557 (Tex.Cr.App. 1972).

■ When the totality of the circumstances of the present case are reviewed in light of these cases, we are unable to conclude that the State in this case has satisfied the heavy burden of proof that the defendant knowingly and voluntarily waived his *Miranda* right to have counsel present when he was questioned by the district attorney. Factors which would support a finding of waiver include evidence that an accused has signed a waiver indicating he understands and waives his rights, *McKittrick v. State*, supra; *Nash v. State*, supra, or volunteers a desire to speak with the police, *Furtick v. State*, 592 S.W.2d 616 (Tex.Cr.App.1980); *Harville v. State*, supra; *United States v. Crisp*, 435 F.2d 354 (7th Cir. 1970), cert. denied 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971), or specifically

disavows a desire to have his attorney present, see *United States v. Monti*, 557 F.2d 899 (1st Cir. 1977).

■ None of these circumstances are shown in the present case. The uncontroverted evidence in this case is that the eighteen year old appellant retained an attorney who accompanied him when he surrendered himself to authorities, and this attorney with appellant's knowledge secured an agreement from the police not to question the appellant in his attorney's absence. Frustrated in his attempt to locate the murder victim's body, the deputy sheriff sought but was denied the attorney's consent to let the appellant aid in the search. Although the District Attorney knew the appellant was represented by retained counsel who refused to permit such a procedure, he arranged to have the appellant brought from the jail at midnight to the search scene, a wooded area where five to ten armed officers were searching. The appellant was neither informed of the purpose of the fifteen-minute trip nor asked if he wanted his counsel to be present. Although the appellant was advised of his *Miranda* rights once he arrived at the isolated search scene, he neither expressly waived these rights nor indicated he had ceased to rely on the agreement the police had made not to question him. This evidence is not sufficient to satisfy the State's burden to prove the appellant's incriminating response was given after a knowing and voluntary waiver of the right to counsel discussed in *Miranda*.

As we noted earlier, we do not decide this case under the Sixth Amendment, and *Williams v. State*, 566 S.W.2d 919 (Tex.Cr.App. 1978), is therefore not directly applicable. Nevertheless it is instructive to note certain distinctions between the facts in the present case which are insufficient to show a waiver of the right to counsel discussed in *Miranda*, and the facts in *Williams* which were sufficient, taken as a whole, to prove the defendant there had waived his Sixth Amendment right to counsel. In *Williams* the defendant's confession was taken in a police sergeant's office, after he had been taken before a magistrate and advised of his rights as provided by Art. 15.17, V.A.C. C.P. The confession, including advice concerning the defendant's constitutional rights, was read to the defendant before he signed it. The officer who took the confession stated that the defendant had the opportunity to telephone his attorney but did not do so, and that the defendant freely discussed the case with him. The two and a half page signed confession, containing various matters extraneous to the crime, corroborated the officer's testimony. Although Williams' attorney told Galveston authorities he didn't want Williams to be questioned unless he was present, there was no evidence the authorities made such an agreement upon which the defendant could rely. By contrast, in the present case appellant was questioned at midnight in an isolated area, contrary to an agreement he knew existed. He was not afforded the opportunity to call or summon his attorney to the area. He did not state that he wanted to waive the right to counsel, or sign a waiver.

Because the State in this case failed to show that the appellant had waived his *Miranda* right to the presence of counsel, testimony concerning his incriminating response stemming from custodial interrogation in his counsel's absence should not have been omitted.

■ The other evidence presented by the State linking the appellant with the murder was testimony by Sandra McIntyre that the appellant had been acquainted with the deceased, and that he had made certain inculpatory remarks. McIntyre testified that she and her husband had talked with the appellant on his release from jail the day after the murder, that her husband had said, "you killed a girl and you are only eighteen," and that appellant had replied, "I had no right to take her life." McIntyre also testified that in a later conversation she had asked the appellant why he had killed Vicky Gill, and he said, "I remember I was doing it but it was like someone else was doing it." No other direct evidence linking the appellant with the crime was

presented. Virginia Brown testified that on the day of the murder, as she was driving home from work on Lake Park Drive, she saw a Cadillac and a motorcycle pulled over on the other side of the road, and a young man and young woman walking away from her toward the woods. She could only remember that the young man was large and tall, and the young woman was blonde and clad in jeans. When shown a photograph of Vicky Gill's motorcycle, Brown stated that it resembled the one she had seen by the side of the road. Vicky Gill's body was found about two and a half miles away from her motorcycle, which the police discovered overturned in a ditch along Lake Park Drive. We are unable to conclude that the evidence of appellant's guilt in this case is so overwhelming that the improper admission of the testimony complained of was harmless error.

The judgment is reversed, and the cause remanded.