**David Franklin STONE, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 12–81–0144–CR.**

Court of Appeals of Texas,
Tyler.

April 28, 1983.

Weldon Holcomb, Tyler, for appellant.

Charles F. Montgomery, Jr., Asst. Dist. Atty., Jack Skeen, Jr., Dist. Atty., Tyler, for appellee.

COLLEY, Justice.

Appellant was convicted of murder by a jury on his not guilty plea. The jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections.

Appellant was first tried and convicted of the same offense by a jury in January 1979. That jury assessed his punishment at forty years confinement in the Texas Department of Corrections. The Court of Criminal Appeals reversed the conviction for error committed by the trial court in admitting into evidence incriminating statements made by appellant as result of a custodial interrogation in violation of appellant's *Miranda* rights. *Stone v. State*, 612 S.W.2d 542 (Tex.Cr.App.1981).

No challenge is made by the appellant as to the sufficiency of the evidence.

In this appeal appellant raises two grounds of error: (1) the error of the trial court "... in failing to instruct the jury on the law of accomplice [testimony] as raised by the evidence in this cause"; and (2) the error of the trial court "... in failing to reduce the sentence received by defendant at second trial to the [judgment] received at first trial which was reversed on constitutional grounds."

Appellant's argument under his first ground is that the State's witnesses, Sandra McIntyre, Denny Carlson and Richard Swann, were accomplice witnesses as a matter of law, or at least the evidence raises a question of fact as to whether each was an accomplice witness and that the question should have been submitted to the jury. In passing on this ground it is necessary to briefly discuss the evidence to determine if it connects any one of such witnesses as a

party to the commission of the offense for which the appellant was tried and convicted herein.

The record reflects that Vicky Lynn Gill was brutally murdered on July 7, 1977. During that day she had visited briefly with her father and brother showing to each of them a certificate of title she had received for a motorcycle she had built herself. At approximately 5:00 p.m. on July 7, 1977, the State's witness, Virginia Jeraldine Brown, observed a two-toned Cadillac automobile parked next to a motorcycle, and a young man and woman walking towards the woods near the location where Vicky Gill's body was later found. Brown described the woman as having shoulder-length blond hair and dressed in jeans. She described the man as large and tall. Other testimony in the case established that these descriptions matched the physical characteristics of appellant and the victim. She testified also that she saw the same Cadillac again in the yard of the home of appellant's parents. The evidence reveals that appellant owned such a vehicle. The victim's body was located and recovered by the Smith County Sheriff's Department on July 7, 1977, acting on information given the officers by the appellant and his attorney on the same date.

Sandra McIntyre's (hereafter McIntyre) testimony reveals that she was an acquaintance of appellant, and that her husband Joe was a friend and acquaintance of the appellant and also a fellow member of a motorcycle club called the "Cossacks." McIntyre also knew the murder victim. On July 8, 1977, appellant visited with McIntyre and her husband at their home in Tyler, Texas. McIntyre overheard a conversation between her husband and appellant where, when her husband told appellant, "[b]ut you are only eighteen years old and you have beat a girl to death," appellant replied, "I shouldn't have killed her but . . . ." McIntyre also testified that when she asked appellant whether or not he " . . . thought he would do something like that again," appellant replied, "he didn't know." The record clearly demonstrates that McIntyre was not connected with the commission of the murder in any way, either before, during or after the commission of the offense.

Denny Carlson (hereafter Carlson) was also a member of the Cossacks and he was a friend of appellant as well. On July 8, 1977, Carlson was also visiting at the McIntyre home in Tyler where the McIntyres were barbecuing meats on a grill in the backyard of their home. Carlson testified he observed the appellant burning some papers in the barbecue grill among which, the witness observed, was a certificate of title for a motorcycle, and at trial Carlson testified in part as follows:

"Q  All right. Is that the same title that you see [sic] David Franklin Stone start to burn out there on that date?

A  Yes, sir.

Q  Now, when he was burning these papers, did he make any statement to you as to whether or not, or why he was burning them or anything?

A  Not at the time, sir.

Q  Did he later?

A  Yes, sir.

Q  What did he say?

A  He said he didn't want to have them on him.

Q  I'm sorry?

A  Did not want to have it on him.

Q  He didn't want to have them on him?

A  yes, sir.

Q  All right. Did he give you that title, that piece of paper right there?

A  Yes, sir.

·          ·          ·          ·          ·

Q  Let me shift a little bit, Mr. Carlson, and let me ask you if, within the last, let's say within the last couple of weeks, maybe three weeks, have you seen David Franklin Stone during that period of time?

A  Yes, sir.

Q  Where did you see him?

A  At the Harley-Davidson shop.

Q I'm sorry, where?

A At the Harley-Davidson shop.

Q At the Harley-Davidson shop?

A Yes, sir.

Q Is that a motorcycle shop?

A Yes, sir.

Q Did he talk to you or make any statement to you that his trial was fixing to come up?

A Yes.

Q And did he say anything to you in reference to what you ought to do in reference to his trial fixing to come up?

A Yes.

Q What did he say?

A He said, lay low.

Q To lay low?

A Yes, sir."

The record reflects that Carlson, after recovering the title, forged the victim's name thereto, ostensibly transferring the title to the motorcycle to himself. Carlson readily admitted the forgery, but denied on cross-examination that the State had given him immunity for his testimony in the case.

Richard Swann (hereafter Swann) was also a friend and acquaintance of appellant at the time of the offense and a member of the Cossacks motorcycle club. Swann testified that on the evening of July 7, 1977, appellant called him on the telephone asking for help. Appellant asked the witness Swann to bring a shovel and meet him at an Exxon station on the Van Highway in Smith County. Swann met the appellant but failed to secure a shovel as requested. Swann testified that the appellant was very upset and agitated when he saw him on that night and said to him, "... she's dead, she's dead...." and directed Swann in driving to the location where the body of the victim was later found. Swann got out of his vehicle in which he and appellant were traveling after the appellant had advised him where to stop on the highway and went in search of and found the body of the murder victim. Swann testified he felt for a pulse on the body and found none. Swann returned to his vehicle and drove appellant ultimately to a lawyer's office (Weldon Holcomb) who subsequently accepted employment as appellant's counsel, and who now represents appellant in this appeal. The record shows that Swann gave the same testimony before the grand jury as he gave at the trial of the case.

No evidence produced at trial even suggests that McIntyre, Carlson or Swann participated in any way in the murder of Vicky Lynn Gill within the purview of Section 7.02, V.T.C.A., Penal Code.[1] The claim of appellant that McIntyre is an accomplice witness is, in our opinion, entirely frivolous. While Carlson might have been prosecuted for forging the motorcycle title, or for concealing evidence under Section 38.09 of the Penal Code, the facts show, as a matter of law, that he could not have been charged with the murder of Vicky Lynn Gill as a party under the provisions of Section 7.01 et seq. of the Penal Code. *Thompson v. State,* 501 S.W.2d 109 (Tex.Cr.App.1973); *Easter v. State,* 536 S.W.2d 223 (Tex.Cr.App.1976). There is no evidence showing, or tending to show, Swann's complicity with the crime under the same provisions of the Penal Code above quoted. *Easter v. State, supra.*

It should be noted here that none of the persons claimed by appellant to be accomplice witnesses were charged with the offense for which appellant was on trial, and that the facts concerning the relationship of each alleged accomplice witness with the appellant and the offense were undisputed. Based upon our careful examination of the record we conclude as a matter of law that McIntyre, Carlson and Swann are not accomplice witnesses. Appellant's first ground is overruled. *See Silba v. State,* 161 Tex.Cr.R. 135, 275 S.W.2d 108 (1954).

■ In his second ground, appellant argues that the decision of the United States Supreme Court in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), requires reversal here because the jury in appellant's second trial assessed a

1. Hereafter Penal Code.

harsher punishment against appellant (ninety-nine years) than he received in his first trial (forty years). As appellant points out, the jury was informed in the second trial at the guilt/innocence stage that appellant had previously been tried for the same offense. We quote from portions of the cross-examination of the State's witness McIntyre:

"Holcomb: How many times would you say that Mr. Gill has talked with you since this occurrence in 1977?

McIntyre: Since the last trial, quite a few, but before that—

MR. HOLCOMB: Your Honor, we would respectfully at this time move for a mistrial in this matter.

THE COURT: It is denied.

MR. HOLCOMB: Note our objection.

Holcomb: Ma'am?

McIntyre: But before the other trial, I never talked—.

MR. HOLCOMB: We renew our objection and request for a mistrial, Your Honor.

THE COURT: It is denied, Mr. Holcomb.

MR. HOLCOMB: Thank you."

As shown by the foregoing testimony, the jury was not advised as to what punishment, if any, was assessed against appellant in the former trial nor was the jury informed whether the trial resulted in a conviction or mistrial or that the same was reversed on appeal. Such testimony also reveals that while appellant moved for a mistrial, he did not request the court to instruct the jury to disregard the improper, albeit inadvertent, revelation by the witness McIntyre of the fact that appellant had been previously tried for the same offense. *North Carolina v. Pearce, supra,* in the name of due process, prohibits a *trial judge* from imposing a harsher punishment against a defendant upon retrial than that imposed in the first trial where the record does not explain the reasons ("objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding") for the increased punishment.

Such holding is firmly rooted in the premise as stated by the court:

Due process of law, then, requires that vindictiveness against the defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

The question as to whether due process requires extension of the rule of *North Carolina v. Pearce, supra,* to jury resentencing was addressed in *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973). The United States Supreme Court there reaffirmed the reasoning in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), holding "... that vindictiveness against the accused for having successfully overturned his conviction has no place in the resentencing process, whether by judge or jury ... due process of law does not require extension of *Pearce*-type restriction to jury [re-]sentencing." The court in *Chaffin v. Stynchcombe, supra,* went on to state that the record in that case showed that the jury was not aware of the punishment assessed the defendant in his former trial and that they had not been told that the defendant had been convicted in the former trial and that the conviction had been overturned on a collateral attack. The court then addressed defendant's contentions that: (1) "the higher punishment assessed at re-trial (life instead of fifteen years) violated double jeopardy provisions of the 5th Amendment to the United States Constitution through the due process clause of the 14th Amendment"; (2) "higher sentence occasioned by vindictiveness on the part of the sentencing authority violates traditional concepts of fairness in the criminal process"; and (3) "the possibility of a higher sentence, even absent a reasonable fear of vindictiveness, has an impermissible 'chilling effect' on the

exercise of the right to appeal and to attack collaterally a conviction." After carefully reviewing several precedents the court held that the Double Jeopardy Clause is not violated by the jury's assessing a higher punishment upon re-trial and that the Due Process Clause is not offended by such jury action "... so long as the jury is not informed of the prior sentence and the second sentence is not otherwise shown to be a product of vindictiveness." *See also, Weeks v. State,* 521 S.W.2d 858 (Tex.Cr.App.1975). The record demonstrates that this case is controlled by such authorities just cited and appellant's second ground of error is overruled.

Finding no error judgment of the trial court is affirmed.