**Ralph RANSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 67246.**

Court of Criminal Appeals of Texas, En Banc.

April 9, 1986.

William E. Stallings, on appeal only, Waco, for appellant.

Felipe Reyna, Dist. Atty., Karen C. Matkin, Asst. Dist. Atty., Waco, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

This is an appeal from a conviction for sexual abuse of a child. V.T.C.A., Penal Code, Section 21.10 (repealed by Acts 1983, 68th Leg., p. 5321, ch. 977, § 12, eff. Sept. 1, 1983). Punishment was assessed at twenty years' confinement.

The indictment in the instant case alleges in pertinent part that on or about January 20, 1980, appellant:

"did then and there with intent to arouse and gratify his sexual desire, intentionally and knowingly engage in deviate sexual intercourse, namely he did place his mouth on the genitals of KRISTEIN BISHOP, a female child younger than seventeen years of age and not his spouse, . . ."

In his first ground of error, appellant contends that the State failed to prove that he had the intent to arouse and gratify his own sexual desire.

In considering the sufficiency of the evidence to show the intent to arouse or gratify a defendant's sexual desire, we have held that the evidence of a common pattern of similar acts is admissible as tending to prove the intent, *Ferguson v. State*, 579 S.W.2d 2 (Tex.Cr.App.1979), and that the requisite specific intent can be inferred from the defendant's conduct, his remarks, and all surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211 (Tex.Cr. App.1981); *Bowles v. State*, 550 S.W.2d 84 (Tex.Cr.App.1977).

In the instant case, the victim, appellant's stepdaughter, testified that appellant placed his mouth on her genitals and breasts and inserted his finger inside her vagina. She further testified that appellant had previously had sexual contact with her, including having her place her mouth on his genitals. Viewing the victim's testimony regarding the appellant's conduct and the pattern of sexual abuse in this case in the light most favorable to the verdict, we find that the State discharged its burden of proving the requisite intent on the part of appellant. The first ground of error is overruled.

Appellant testified during direct examination that he had never sexually abused his children. On cross-examination, the following occurred:

"Q. Okay, sir. Now, Mr. Ranson, do you recall calling me at my office and requesting that I come to the Police Department to talk to you when you were arrested?

"A. I believe another attorney called you, didn't he?

"Q. No, sir. You called me personally.

"A. I was drinking that evening. I do not recall, no.

"Q. Okay. Do you recall coming down to the police station, where you and I and Detective Maldonado sat down with a tape recorder and you made a rather lengthy statement into that tape recorder concerning various events surrounding this offense?

"MR. STALLINGS: Your Honor, at this time, we're going to object to any referral to any kind of tape recording, and we would ask that the jury be removed.

"THE COURT: Overruled.

"MRS. MATKIN: Thank you, Your Honor.

"MR. STALLINGS: Please note our exception.

"MRS. MATKIN: This is for the purposes of impeachment.

BY MRS. MATKIN:

"Q. Do you call that, Mr. Ranson?

"A. Would you repeat the question, please.

"Q. The question is, do you recall coming down to the police station, where you met with Detective Maldonado and myself, in which we had a tape recorder and recorded a rather lengthy conversation that you engaged in?

"A. Yes. I vaguely remember it. Yes.

"Q. Okay, sir. Now, during that conversation, you and I discussed the various relationships that you had with Betty, or Senora Gant, who you were first married to, and Donna Jean Ranson, who you married also. Do you remember those conversations?

"A. Yes. I remember several conversations.

"Q. Okay, sir. Do you recall making the following statement to me concerning the nature of your attempt to get the two women together? And I will read a rather lengthy statement.

"MR. STALLINGS: Prior to you reading that, we object, Your Honor, at this time, on the State's—on her reading from any kind of record that she had there presently—because the State has failed to lay the proper predicate in regard to the care, custody and control of that particular tape, how it was reduced to writing, and how it became a typewritten report. She was talking about a tape recording, and now she has got a written report from it.

"MRS. MATKIN: Judge—

"MR. STALLINGS: At this time, it is improper for her to be reading from any kind of report. We don't have the slightest idea where that report came from.

"MRS. MATKIN: Judge, in order to impeach the witness, I must establish specifically certain statements, so that at a later time, we may bring in the testimony, if he denies making these statements. So, I must be rather specific about it. I will not refer to the paper, if he desires that I not refer to it. But I want to make sure that the statements are specific enough that we make, so that he may be later impeached on them.

"MR. STALLINGS: Your Honor, at this time—

"MRS. MATKIN: It is a proper method of cross examination.

"MR. STALLINGS: Your Honor, that's an improper method of cross examination. The State had the opportunity, when they put on their case in chief, to put on someone to testify, if in fact, these papers are accurate. We have no idea of their authenticity.

"MRS. MATKIN: Judge—

"MR. STALLINGS: And they should have put on somebody to prove up ... I object to Counsel's interrupting me, also. To prove up—as she has done so

many times during this trial—the authenticity of the tape, who took the tape, where the tape was kept, how it was stored, who transcribed the tape, if in fact, it was transcribed, and whether or not there was a tape in the first place.

"MRS. MATKIN: Judge, first—

"MR. STALLINGS: I think it's a little late for the State to do this.

"THE COURT: I'll overrule the objection.

You may ask the question. The witness can answer it, if he is capable of answering it.

"MRS. MATKIN: Thank you, Your Honor.

"MR. STALLINGS: Please note our exception."

Thereafter, the prosecutor began reading excerpts from appellant's oral statement and asking appellant if he remembered making those statements.

In his second ground of error, appellant contends that the trial court erred in allowing the State to read into evidence parts of appellant's oral confession without proof that appellant was properly warned. Our reading of the record indicates that appellant was given the required warnings on at least two occasions. The detective who arrested appellant testified that after his arrest appellant was taken before a justice of the peace. Appellant's own testimony on cross-examination indicates that he was also given his warnings immediately before he gave his oral statement:

"Q. Okay, sir. Now, do you recall that, prior to making that statement, Mr. Ranson, I warned you of various rights that you had under the law?

"A. You may have.

"Q. You don't remember that?

"A. No, ma'am. Not all of them.

"Q. You don't remember all of them?

"A. No, ma'am."

■ Furthermore, even if appellant was not properly warned, the record shows that appellant did not make a timely objection on the basis that he now urges on appeal.

The initial interchange between appellant and the prosecutor regarding the oral statement given by appellant begins on page 222 of the statement of facts. Defense counsel did not raise an objection concerning the giving of *Miranda* warnings until page 247 of the statement of facts, some twenty-five pages after the prosecutor had begun this line of questioning. This Court has held time and time again that in order to preserve error an objection must be timely and must call the attention of the trial court to the particular complaint raised on appeal. *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex.Cr.App.1974), and cases cited therein. Clearly, error, if any, was not preserved.

■ Finally, after reviewing all of the evidence, we find that if the statement was erroneously admitted, it was harmless error. Appellant's ten-year-old step child testified in graphic terms regarding the commission of the offense:

"Q. Okay. Now, I want you to tell the jury what happened to you?

"A. Well, my momma, she took—come and got me out of bed and took my clothes off.

"Q. Okay. Where did she take you?

"A. In their room.

"Q. Okay. When you say 'their room', is that Ralph and her room?

"A. Yes.

"Q. Okay. Go ahead.

"A. And she started playing with me. And, then, Ralph asked if he could come and join in. And, then ...

"Q. Okay. That's alright, Kris. Now, when you say 'Donna played with you', could you tell the jury what you mean by that?

"A. She took and licked between my legs and on my breasts.

"Q. Okay. Now, the area between your legs that she licked, do you have a formal word for that? What's that area called?

"A. Vagina.

"Q. Okay. Now, after Ralph asked if he could join in, could you tell them what happened.

"A. He started licking me between the legs and sticking his finger in me and—

"Q. Okay.

"A. —started licking my breasts.

"Q. Licking your breasts. Okay. When you say he 'licked you between the legs', did he lick you on your vagina?

"A. Yes.

"Q. Okay. Down in the area where you go to the bathroom—down in that area?

"A. Yes.

"Q. Okay. Did he do that a lot?

"A. I don't remember.

"Q. Okay. After he did this to you—do you remember how long it lasted? Could you give us a time of how long it lasted?

"A. I don't remember.

"Q. Okay. Now, besides licking you down there, could you tell the jury what else he did?

"A. Licking my breasts and sticking his finger inside my vagina."

She also testified that appellant had engaged in this type of conduct on more than one occasion and had also made her engage in oral sodomy upon him.

The appellant himself testified that at no time had he sexually abused any of his children. He also testified that at one time he was married to two women and that they all lived together in one household. His first wife testified for the defense. On cross-examination, she admitted that he had forced her to engage in oral sex on several occasions with his second wife, the victim's mother. She also testified that appellant suggested on one occasion that she have sexual intercourse with appellant's son. She testified that on another occasion, when they were all living together, she awoke one night and found appellant's son engaging in sexual intercourse with appellant's second wife while appellant kneeled nearby, directing his son in what to do. She also testified that appellant beat his second wife.

John W. Sharp, III, testified that he engaged in sexual intercourse with the victim's mother, appellant's second wife, at the direction of appellant.

Having read the entire record and knowing that the jury had this additional damaging testimony before it, we are compelled to hold that the error, if any, was harmless. The test for harmless error is not whether a conviction could have been had without the improperly admitted evidence but whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Maynard v. State,* 685 S.W.2d 60 (Tex.Cr.App.1985). In *Vanderbilt v. State,* 629 S.W.2d 709 (Tex. Cr.App.1981), we wrote:

"Unless we find a reasonable possibility that the improperly admitted evidence contributed to appellant's conviction, reversal is not required. *Schneble v. Florida,* supra [405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)]; *Wilder v. State,* supra, [583 S.W.2d 349 (Tex.Cr.App. 1979)]. If we conclude 'that the "minds of the average jury" would not have found the State's case *significantly less persuasive ...*' had the testimony now at issue been excluded, we need not reverse. *Schneble v. Florida,* supra. (emphasis added)." [material in brackets added] 629 S.W.2d at 724.

Given the entire record, we cannot say that it is *reasonably* possible that appellant's oral statement contributed to his conviction.

As to punishment, neither the State nor appellant presented any evidence at the punishment phase of the trial. Once again, considering all of the other damaging testimony admitted during the guilt-innocence phase of the trial, and the failure of appellant to produce any mitigating evidence at the punishment phase of the trial, we cannot authoritatively state that it was *reasonably* possible that appellant's oral statement contributed to the jury's decision to

assess the maximum penalty. Appellant's second ground of error is overruled.

The judgment is affirmed.

CLINTON, Judge, dissenting.

Implicated in the second ground of error is an effort by the prosecution to lay a predicate for impeaching appellant through selfcontradiction—by proof of inconsistent statements. It is hornbook law that the predicate consists of asking the witness *"whether he made the alleged contradictory statement,"* and then giving him an opportunity to deny it and prepare to disprove it, or to admit making it and explain the statement. Ray, Texas Law of Evidence (Third Edition) § 692, 1 Texas Practice 633.

As recounted in both the majority and dissenting opinions, counsel for the State framed her questions to appellant in terms of whether he "recalled" or "remembered" making a certain statement. A negative response to such a question is not a denial that he made it. *Huff v. State,* 576 S.W.2d 645 (Tex.Cr.App.1979):

"During the lengthy cross-examination of appellant's wife, the prosecutor repeatedly failed to elicit a denial of the prior statement of the witness before reading the grand jury testimony. ... On at least 14 occasions, much as in the example above, the prosecutor read the testimony to the witness and asked *if she remembered making the statement, without first eliciting a denial of the prior statement.* This use interjected into evidence a large portion of the grand jury testimony that was inadmissible [emphasis added]."

*Id.,* at 647.[1]

Because the prosecutor in the instant cause similarly failed first to elicit a denial of the prior statement, she likewise interjected into evidence a large portion of a purported prior statement that was otherwise inadmissible. For failure of the pros-

ecutor to lay a proper predicate her reading of portions of a prior statement was improper impeachment. *Huff,* supra, at 648.

For that reason as well as the reasons developed by Judge Miller, I respectfully dissent.

MILLER, Judge, dissenting.

Although I agree with the majority's treatment of appellant's first ground of error, I strongly disagree with the handling of appellant's second ground of error. Appellant contends that the trial court erred in allowing the State to read into evidence parts of an in-custody oral confession purportedly made by appellant without proof that appellant was properly warned. I would hold that: the State effectively introduced the statement by reading large portions of it; the State did not demonstrate that appellant received the warnings required by law, nor did it lay the proper predicate for admission of the statement; appellant did indeed preserve error regarding the admission of the statement; and the trial court's error in allowing the statement to be read cannot reasonably be characterized as "harmless."

During direct examination, appellant denied committing the offense. He attempted to show that his wife, Donna, who was the mother of the victim, originated the charges against him because of their marital problems. The State, during cross-examination, attempted to impeach appellant by questioning him regarding the lengthy tape-recorded statement he allegedly made on the night of his arrest. Defense counsel promptly objected to this line of questioning and asked that the jury be removed. This objection was overruled. Claiming that the proper predicate for admissibility had not been laid, defense counsel continued to object to any references to this "statement" and finally asked for, and received, a running objection. (This sequence is set out in the majority opinion, slip op.

---

1. In the alluded to "example above" the prosecutor read two questions and answers of purported grand jury testimony and then asked, "Do you remember saying that to the Grand Jury?"

The witness answered, in part, "I don't remember anything in the Grand Jury. It has been a year ago and I just don't know." *Ibid.*

pp. 98–99.) He later objected to the use of the statement on the grounds that the State failed to prove that, prior to the taking of the oral statement, appellant had received any warnings of his rights or waived those rights as mandated by Art. 38.22, V.A.C.C.P.

The State does not contest appellant's position that the statement was made as a result of custodial interrogation, but claims that no attempt was made to admit the unsigned confession into evidence. This contention flies in the face of reality. The State did not, in fact, actually introduce as an exhibit the tape recording of the statement or the transcript made from the tape recording. Nor did any State's witness actually testify that the appellant made the statement. Instead, the prosecutor read sometimes lengthy passages from the transcript made of this statement and then asked appellant, "did you tell me that?" or, "do you recall telling me that?" Although appellant occasionally testified that he remembered making some of the statements, he generally testified that he was intoxicated at the time and could "not recall" whether he made the particular statements. For example, the following excerpts illustrate a few of the more succinct questions asked of the appellant:

"Q. [BY PROSECUTOR] Okay, sir. Do you recall making the statement 'I never wanted to have sexual intercourse with a girl, that never entered my mind. Really, I never got any sexual pleasure out of it, and I think I can truthfully say that with K____, it was not intended to be pleasure. What I started out to do with K____, kind of [got] out of shape with arguing and misunderstanding, where it got blowed up to where I threatened Donna, if she didn't.' Do you recall making that statement?

A. Part of it.

. . . . .

Q. Okay. Do you recall, when I asked you the question, 'What did you do in reference to K____?' Do you recall answering, 'I kissed on her vagina and let it go at that.' Do you recall saying that?

A. I do not. No, ma'am."

This method of questioning interjected into evidence a large portion of the oral statement of appellant. The statement was thereby introduced just as if the prosecutor had the instrument marked and introduced into evidence as an exhibit. *Huff v. State*, 576 S.W.2d 645 (Tex.Cr.App.1979). The majority apparently recognizes this conclusion, although the issue is not discussed.

The next inquiry is whether the statement was properly admitted, and again the majority does not fully dispose of the issue. The State argues that the statement was properly admissible for impeachment purposes under the provisions of Art. 38.22, § 5, V.A.C.C.P., (1979).

Article 38.22, V.A.C.C.P., (1979), provided in pertinent part:[1]

"Sec. 3. (a) An oral or sign language statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding for the purpose of impeachment only and when:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is told that a recording is being made;

(3) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Sec. 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(4) *the recording device was capable of making an accurate recording, that the operator was competent, and that the recording is accurate and has not been altered;*

---

**1.** Article 38.22, V.A.C.C.P., was significantly amended in 1981, after the trial in this cause.

(5) the statement is witnessed by at least two persons; and

(6) all voices on the recording are identified.

. . . . .

Sec. 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Art. 16.03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, *or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness,* or any other statement that may be admissible under law." [Emphasis supplied.]

Contrary to the state's contention that Section 5 permitted the introduction of the statement without the warnings required by Section 3, we held in *Alfaro v. State,* 638 S.W.2d 891 (Tex.Cr.App.1982) that Section 3 controls over Section 5:

"An oral statement made by the accused as a result of custodial interrogation during the effective dates of that statute (August 29, 1977 through August 31, 1981) is admissible only for impeachment purposes and only when the statement is shown to comply with the six specific requirements contained in Section 3." *Alfaro,* supra at 900.

Appellant's trial occurred during the applicable period discussed in *Alfaro,* supra. His statement, effectively admitted into evidence, was only admissible subject to satisfaction of the six requirements set out in Art. 38.22, § 3, V.A.C.C.P., (1979), as quoted supra. As discussed below, the State failed to show that all six requirements were met, the trial court thus erred in allowing the statement to be read, and the majority fails to demonstrate that the trial court did not so err.

At this point, I address two issues that are discussed by the majority: whether appellant properly preserved error, and whether any error in admitting the state-ment was harmless. Both issues require close examination of the record.

As the majority points out, defense counsel did not make any objection *regarding the failure to give warnings* until well after the prosecutor began to cross-examine appellant by reading his recorded statement back to him. However, defense counsel did object to the reading (introduction) of the statement at the first opportunity, urging grounds that the trial court *should have sustained.* It was only after the trial court erroneously overruled those objections that, at the first opportunity after it became apparent that the warnings may not have been given, appellant's attorney made the appropriate objection brought forward on appeal. Defense counsel's initial objections to the cross-examination are shown in the sequence set out in the majority opinion, slip op. pp. 98–99. Rather than repeat that portion of the transcript, I set out the relevant objections made by defense counsel during the sequence quoted in full by the majority:

. . . . .

"[T]he State has failed to lay the proper predicate in regard to the care, custody and control of that particular tape, how it was reduced to writing, and how it became a typewritten report. She was talking about a tape recording, and now she has got a written report from it.

. . . . .

We don't have the slightest idea where that report came from.

. . . . .

The State had the opportunity, when they put on their case in chief, to put on someone to testify, if in fact, these papers are accurate. We have no idea of their authenticity.

. . . . .

[T]hey should have put on somebody to prove up ... the authenticity of the tape, who took the tape, where the tape was kept, how it was stored, who transcribed the tape, if in fact, it was transcribed,

and whether or not there was a tape in the first place."

After all objections were overruled, the prosecutor went on to read long portions of appellant's statement into the record, beginning with his account of bringing his two wives together, and asking appellant if he remembered making those portions of the statement. Defense counsel successfully had the prosecutor instructed to make her questions more explicit, then had his objection to her reading long statements sustained, and again had her instructed to be more explicit, with a running bill of exceptions to the form of her questions.

The most damaging portions of the statement followed. Appellant was asked if he recalled telling the prosecutor that he told his wife, "I want you to have sex with my son." Appellant responded that his wife had had sex with his son, but not at his urging, so that his previous statement was a lie. Then he was asked about arguing with his second wife over her having sex with K— B—. This led to questioning specifically about the offense in issue. Appellant was asked if he remembered saying, in reference to K— B—, "I kissed her on the vagina and let it go at that." He was asked if he remembered saying, "there were three or four incidents with [K— B—], all total," and if he remembered saying, "most of the time, just caressing her body, and sometimes I would kiss on her, but I think only twice that I kissed her on her vagina." Appellant was also asked about statements he made indicating that he insisted that his second wife caress K— B—, and about statements indicating that his first wife witnessed him forcing his second wife to have sex with his teenage son.

After a few more questions dealing with inconsistencies in his story about breaking up with his second wife, appellant was asked about the conditions surrounding the making of the statement. He indicated that he could not remember how long the taking of the statement lasted, that he had been drinking beer and vodka all day long, and the following:

"Q. [BY PROSECUTOR]: Okay, sir. Now, do you recall that, prior to making that statement, Mr. Ranson, I warned you of various rights that you had under the law?

A. You may have.

Q. You don't remember that?

A. No, ma'am. Not all of them.

Q. You don't remember all of them?

A. No, ma'am."

Defense counsel objected after the next question was asked, on the grounds that the State had not shown that the necessary warnings were given. The prosecutor argued (contrary to *Alfaro*, supra) that any time a witness makes prior inconsistent statements, they are admissible for purposes of impeachment. The defense objection was overruled and defense counsel obtained a running bill of exceptions based on the failure to give warnings.

Appellant's second ground of error is based on this objection and ruling, which the majority finds was too late to preserve error. The majority fails to recognize that defense counsel's *initial* objections to the reading of the statement, set out above, should also have been sustained. The objections adequately informed the trial court that another of the six requirements for admissibility under Art. 38.22, § 3(a), V.A. C.C.P., was not met. Part (4) of Art. 38.22, § 3(a), supra, requires a showing that:

"the recording device was capable of making an accurate recording, that the operator was competent, and that the recording is accurate and has not been altered."

*Alfaro*, supra, clearly makes this a requirement of admissibility for impeachment purposes, just as a showing of warnings and a waiver of rights is required. It is apparent from the record, as set out by the majority, that the prosecutor thought that the only prerequisites for admissibility were those for "plain vanilla" prior inconsistent statements: mentioning the time and place at which, and the person to whom, it is suggested that the statements were made. See 25 Tex.Jur.3d § 3381

(1983) and cases cited therein. Under *Alfaro*, supra, the trial court erroneously agreed with the prosecutor and allowed the reading of the statement over defense counsel's objections.

*Ex parte Bagley,* 509 S.W.2d 332 (Tex. Cr.App.1974), is relied upon by the majority to demonstrate that appellant failed to preserve error by objecting in time. In *Bagley,* supra, defense counsel failed to make *any* objection regarding involuntariness or the failure to warn, and failed to make any *other* objection that would have preserved error. Numerous other cases can be found where the failure to make *any* sustainable objection to the admission of a defendant's statement was held to have waived error. See, e.g., *Holmes v. State,* 493 S.W.2d 795 (Tex.Cr.App.1973); *Larocca v. State,* 479 S.W.2d 669 (Tex.Cr.App.1972); *Reese v. State,* 404 S.W.2d 320 (Tex.Cr.App.1966); *Macias v. State,* 386 S.W.2d 534 (Tex.Cr. App.1965). Still other "waived error" cases can be found where the proper objection was made but was not made at the first opportunity; i.e., was not made as soon as the grounds of objection became apparent. *Sierra v. State,* 482 S.W.2d 259 (Tex.Cr.App.1972); See generally, 15 Tex. Digest 2d, Criminal Law, Key # 693 (West 1983).

In the instant case, much of the complained of testimony came in before the sustainable objection regarding the failure to warn, but *after* defense counsel's sustainable objections regarding the failure to prove the proper predicate. This presents a rather unique situation in the area of preservation of error. As set out in the majority opinion, the defense began objecting at the beginning of the introduction of the evidence. The initial general objection was followed, before any of the evidence was disclosed to the jury, with a specific objection; and as the evidence was gradually disclosed the defense periodically urged (at pages 224, 226, 230 and 246 to 248 of the record) different specific grounds for objection, which I have highlighted, supra. As pointed out earlier the evidence should have been excluded for *each* of the reasons advanced by the defense via specific objec-

tion. Every objection was erroneously overruled. Thus the appellant preserved error in the trial court by timely objection. There can be no question of that.

Assuming the majority would agree, they would respond that appellant has failed to preserve error on appeal, since he does not complain of the statement's admission over his initial objections (improper 38.22 § 3(4) predicate) but rather complains for the reason espoused in his later (the majority says untimely) objection (improper 38.22 § 3(3) predicate). It is well established that the grounds of an objection at trial must be the same as the grounds urged on appeal or nothing is preserved for review. See *Vanderbilt v. State,* 629 S.W.2d 709, 721 (Tex. Cr.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1981), and cases cited therein. In this case, however, appellant's brief was due and timely filed with this court eighteen months *before* we handed down *Alfaro,* supra, the first case that gave him notice that his initial objection was grounds for reversal. To fault him for not raising grounds that are not yet recognized grounds for reversal is a unique method of upholding this particular conviction, but fundamentally unfair.

The premise of the contemporaneous objection rule is that a trial judge must be alerted immediately when the objectionable nature of the evidence becomes manifest. Here the defense counsel did so as each ground became apparent (e.g., objecting to improper warnings as soon as the appellant testified he didn't remember receiving warnings). The rule that trial and appellate grounds must be the same likewise is premised on the notion that the trial judge was told of the specific reason that the evidence was improper *and* on the notion that it is wrong to fault a trial judge's ruling for any reason that was not pointed out to him during the contemporaneous objection. On appeal appellant urged the only trial objection ground that caselaw classed as reversible error, and pointed out that he had objected generally and specifically from the first proffer of the erroneously admitted evidence. To deny his com-

plaint because after his brief was filed caselaw for the first time classed his other trial objection grounds as reversible error serves no purpose behind the contemporaneous objection rule or the rule that trial grounds and appellate grounds must be the same. We *should* therefore decline to do so. Pending analysis of harm, appellant's second ground of error *should* be sustained.

The majority opinion would hold that error, if any, was harmless, under the standard of *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) and *Vanderbilt,* supra at 724. This test, as the majority correctly states, is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. Conversely:

> "If we conclude 'that the "minds of an average jury" would not have found the State's case *significantly less persuasive ...*' had the testimony now at issue been excluded, we need not reverse. *Schneble v. Florida,* supra (emphasis added)." *Vanderbilt,* supra at 724.

As the above summary of the impeachment sequence demonstrates, some enormously damaging evidence was read to the jury. The State's entire case prior to the impeachment was the testimony of K— B—. The majority holds that her testimony was sufficient to overrule appellant's first ground of error, and I agree. However, her testimony did not constitute such an overwhelming amount of evidence against appellant that I would conclude that had appellant's own incriminating statement been excluded, the average jury would not have found the State's case significantly less persuasive. In other words, there is a reasonable (even substantial, in this case) probability that the evidence complained of might have contributed to the conviction.

*Vanderbilt,* supra, cited by the majority as an example of harmless error, is easily distinguished on its facts. There the complained of evidence was hearsay: specifically, a firearms identification expert's oral testimony concerning information from a computer that showed the fatal bullet came from a Smith & Wesson revolver. We held that, even if the jury accepted the expert's opinion as fact, his statement that there were "literally millions" of Smith & Wesson revolvers rendered the testimony harmless beyond a reasonable doubt. *Id.* at 725.

The statements read to the jury in the instant case specifically admitted the crime in question, and mentioned other incidents of arguably coercive and perverted conduct. I find this case more closely analogous to *McCrory v. State,* 643 S.W.2d 725 (Tex.Cr.App.1982), where an oral statement was admitted although the defendant received no warnings. We held that because the statement was the only conclusive evidence of guilt, its admission could not be considered harmless beyond a reasonable doubt. Although appellant's statement was not the only evidence in the case before us, in view of the hotly contested issues and direct defense testimony controverting that of the State, the statement's probable negative impact on the jury cannot realistically be denied. Considering further the nature of the statement, and that appellant received the maximum penalty for this offense, I fail to understand how the majority concludes that the inadmissible evidence was harmless beyond a reasonable doubt. See *Stone v. State,* 612 S.W.2d 542 (Tex.Cr.App.1981); *Newberry v. State,* 552 S.W.2d 457 (Tex.Cr.App.1977).

In summary, the majority fails to adequately or realistically discuss and dispose of the issues raised by appellant's second ground of error. I therefore respectfully dissent.

TEAGUE, J., joins.