Calvin Coolidge **HAGER**, Jr., Appellant,

v.

**STATE of Texas, Appellee.**

**No. 11–86–161–CR.**

Court of Appeals of Texas, Eastland.

July 9, 1987.

Rehearing Denied Aug. 20, 1987.

Kerry P. FitzGerald, Marc H. Richman, Dallas, for appellant.

Billy M. Bandy, Dist. Atty., Athens, for appellee.

## OPINION

DICKENSON, Justice.

The jury convicted Calvin Coolidge Hager, Jr., of felony theft,[1] and the district judge assessed his punishment: a two-year period of probation which was conditioned upon payment of a $1,000 fine, dismissal of the civil suit which appellant filed against complainant, and payment of the attorney's fees for defending complainant in the civil suit. We reverse the conviction and remand the cause.[2]

Appellant presents six points of error. In Points of Error Nos. 1 and 2, he argues that the evidence is insufficient to prove him guilty of the felony offense of theft. These points are overruled. Even though appellant, his wife, and their employee testified to facts which would have justified an acquittal, the jury was free to reject that testimony and to believe the complainant and her friend's version of the disputed facts. As an appellate court, we are to review the evidence in the light most favorable to the jury's verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See, e.g., *Houston v. State,* 663 S.W.2d 455 (Tex.Cr. App.1984).

Appellant and his wife operated a jewelry store in Gun Barrel City, Henderson County, Texas. Jane Harris testified that she took her wedding ring set and two other rings to appellant's jewelry store. Appellant and his wife acknowledged receipt of the wedding ring set and one other ring [which were re-sized and returned], but they denied receiving the ring which Jane Harris described as her mother's diamond ring [which was not returned]. Much of the transaction when the rings were left is disputed, but appellant agreed that his wife put the rings which were left into two envelopes and that he took them back to his shop. Appellant said that he was standing there while the rings were put into the two envelopes and that he was there "during that whole time" while complainant left the rings and received the receipt stubs off the two envelopes from his wife. There was also testimony to support the jury's finding that the diamond ring which was not returned was worth more than $750. The complainant's testimony was supported by her friend's testimony, and the jury was free to believe them. This testimony is sufficient to justify the jury's finding that on or about May 14, 1985, in Henderson County, appellant:

[D]id intentionally and knowingly appropriate by acquiring and otherwise exercising control over property other than real property, to-wit: one ladies diamond ring, of the value of more than $750.00 but less than $20,000.00, without the effective consent of Jane Harris, the owner

---

1. TEX.PENAL CODE ANN. sec. 31.03 (Vernon Supp.1987) defines the offense and declares that it is a felony of the third degree if "the value of the property stolen is $750 or more but less than $20,000."

2. This appeal was transferred from the 12th Court of Appeals to this Court on June 18, 1986. See TEX.GOV'T CODE ANN. sec. 73.001 (Vernon Pamph.1987).

thereof, and with intent to deprive the said owner of said property.

In his final four points of error, appellant argues that the trial court committed reversible error in permitting the State to introduce testimony from the witness, Ellen McBrayer, that appellant "switched rings" and returned a ring of much less value than the one she had left with him. We sustain the points relating to appellant's argument that the State failed to lay a proper predicate to impeach him with this testimony. The other two points need not be considered because the trial judge made it clear in his ruling that this evidence was admitted "for impeachment purposes only."

The record shows that when the State called the witness, Ellen McBrayer, appellant's attorney objected and requested permission to approach the bench. The following objection, arguments, and ruling were developed outside the hearing of the jury:

DEFENSE ATTORNEY: Your Honor, I would like to object to this line of questioning unless it has to do with the character of my client. If it has anything to do with a subsequent activity or event after the matter in question here today it has no relevance to the matter and it can only be done to influence the jury. To my knowledge she has no information that can be useful to the jury, has no knowledge about the events in question. If she's limited in regard to character of Mr. Hager, I have no objection. The events concerning her and Mr. Hager, I do object.

DISTRICT ATTORNEY: Your Honor, it's proper impeachment. And, two, it goes to scheme, intent, motive and design. It's an extraneous offense. But beyond that it's impeachment. The defendant testified he only had two claims and this was not one of those. And then he stated this was a false claim. So I think I'm entitled to show some veracity. These are identical circumstances as far as extraneous crimes are concerned.

DEFENSE ATTORNEY: Your Honor, he testified he had two claims prior to this claim.

DISTRICT ATTORNEY: I asked him, I said, "Are you saying you only had two claims since you been in business." He said yes.

THE COURT: I'm of the opinion with the record in the state it's in it is admissible for the purposes of impeachment and I'm going to admit it for the purposes of impeachment.

DEFENSE ATTORNEY: Your Honor, the case has not been tried. It's still on the docket.

THE COURT: I understand that. And I'm not going to try it up here. But I think he's entitled to offer her testimony for the purposes of impeachment in view of the state of the record.

(The following proceedings conducted before the jury.)

THE COURT: For the record, the objection is overruled. The testimony of the witness is admitted *for impeachment purposes only.* (Emphasis added)

Following that ruling, the jury learned all of the damaging details of appellant's dispute with Ellen McBrayer and her contention that he had "switched rings," returning a ring of much less value than the one she had left with him for repair.

In ascertaining whether this testimony was admissible for impeachment purposes, we look to appellant's testimony. On direct examination, appellant testified that on one prior occasion he lost a customer's ring and replaced it with "another ring ten times the value." He said that Mrs. Harris' claim was the "second claim in all [the] years [I've] been in business." The customer on the first loss had a receipt for her ring [Mrs. Harris did not have a receipt for her missing ring]. Appellant testified that he remembered receiving that ring [neither appellant nor his wife admitted receiving Mrs. Harris' missing ring]. On cross-examination, the district attorney attempted to lay a predicate for impeachment, to-wit:

Q: Now, I believe you stated that you had only two claims while you were in the jewelry business? One you said was in Dallas, is that correct?

A: Yes, sir.

Q: And this one?

A: Yes, sir.

Q: You know an Ellen McBrayer, Hill-crest Shores?

A: Yes, sir.

Q: *Didn't she file a charge against you for the same thing?*

A: *Yes, sir. I had forgot that.* (Emphasis added)

Q: You'd forgotten that?

A: Yes, sir.

Q: Aren't you currently suing her for libel along with Mrs. Harris for libel?

A: Yes, sir.

Q: But that had slipped your mind?

A: Yes, sir.

■ When appellant admitted the charge by Ellen McBrayer, he had impeached himself and Ms. McBrayer's testimony should not have been admitted. See, e.g., *Huff v. State*, 576 S.W.2d 645 at 647 (Tex.Cr.App.1979); *Hoffman v. State*, 514 S.W.2d 248 at 251 (Tex.Cr.App.1974); *Wood v. State*, 511 S.W.2d 37 at 43 (Tex.Cr.App.1974). Moreover, it was error to permit the impeachment proof of specific acts of misconduct through the testimony of another witness. See RAY, LAW OF EVIDENCE sec. 656 (Texas Practice 1980) and the authorities therein cited. While this case was tried before the effective date of the new Texas Rules of Criminal Evidence, we note that Rule 608 prohibits proof of specific instances of misconduct in order to impeach the credibility of a witness.

■ We do not agree with the district attorney's contention that this evidence was admissible as an exception to the general rule against proof of extraneous offenses which was explained in *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). See *Plante v. State*, 692 S.W.2d 487 at 491 (Tex.Cr.App.1985):

First, it must be determined that the extraneous offense evidence is relevant to a material issue in the case other than the defendant's character. Second, the evidence must possess probative value

which outweighs its inflammatory or prejudicial effect.

\*　　\*　　\*　　\*　　\*　　\*

If there is a reasonable possibility that the inadmissible evidence might have contributed to either the conviction or the punishment assessed, then the error was not harmless.

See also *Templin v. State*, 711 S.W.2d 30 at 33 (Tex.Cr.App.1986); *Kelley v. State*, 677 S.W.2d 34 at 36 (Tex.Cr.App.1984). We hold that the evidence given by Ellen McBrayer fails to pass the first step of the two-step test of admissibility discussed in *Plante v. State*, supra. The Court of Criminal Appeals held in *Kelley v. State*, supra at 36:

Introduction of an extraneous offense is inherently prejudicial. . . . [A]n accused's propensity to commit crimes is not an issue which is material to whether he is guilty of the specific conduct charged by the State.

Since the extraneous offense evidence was not relevant to any material issue[3] in the case other than appellant's character, we hold that the trial court erred in permitting Ms. McBrayer's testimony as to her claim that appellant committed the extraneous offense. In discharging this Court's responsibility under TEX.R.APP.P. 81(b)(2), we are unable to determine beyond a reasonable doubt that the error made no contribution to the conviction; consequently, the judgment of conviction must be reversed.

The judgment of the trial court is reversed, and the cause is remanded for trial.

---

**3.** The two offenses were not similar enough to establish a common plan or "modus operandi." There was a claim of "switched rings" in one case, but not the other.