MARY'S OPINION HEADING 






                                                                                    NO. 12-03-00398-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
FLOY JEAN VOISIN,                                        §                APPEAL FROM THE 173RD
APPELLANT
 
V.                                                                         §                JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                         §                HENDERSON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            A jury convicted Floy Jean Voisin of murder and assessed her punishment at imprisonment
for life and a $10,000 fine. Appellant presents three issues complaining of the trial court’s admission
into evidence of certain statements made by her and her daughter. We affirm.
 
Background
            The victim, David Voisin , was a mentally retarded, severely undernourished adult who lived
with Appellant and her daughter near Murchison. Appellant was David’s primary caregiver. 
Appellant’s husband was in prison during the events culminating in David’s murder. In the early
spring, a neighbor noticed David was no longer at the house, and the rumor ran through the
neighborhood that David had been poisoned and his body thrown in a cistern next to the home. The
local constable reported the rumor to Kay Langford, an investigator with the Henderson County
Sheriff’s Department, and Langford commenced an inquiry into David’s whereabouts. Langford
discovered that Appellant was in jail on a drug charge. Appellant told Langford in a recorded
statement that she had heard the rumor about the body in the well, but that it was not true. She said
that David was staying temporarily with relatives in Florida. Langford contacted the relatives and
determined that David had never been with them.
            On July 1, Langford confronted Appellant with the responses from the relatives. Appellant,
in a second recorded statement, told Langford, D.A. Investigator Ray Nutt, and Texas Ranger Steve
Foster that her earlier explanation of David’s disappearance was untrue. She then said that while
playing around the cistern, David had leaned over it, lost his footing, and fell in. When she looked
in the well, David was not moving so she assumed he was dead. Frightened and unsure of what to
do, she had left his body in the cistern.
            That afternoon David’s decomposed body wrapped in cloth and bound with wire was dug out
from under an accumulation of household garbage in the cistern. Since the body had been wrapped
in cloth and bound with wire, it was apparent that Appellant’s second statement was also untrue.
            Later that day, Appellant gave a third recorded statement in which she said that immediately
before his death, she and David were arguing in the bathroom. In the course of the argument, David
hit her and she reacted by pushing him away, causing him to fall down hitting his head on the toilet. 
She noticed that he was bleeding and not moving, but she could not revive him with mouth to mouth
resuscitation. She dragged the body from the bathroom to the garage. Later, someone else put the
body in the cistern. The pathologist’s findings, however, were inconsistent with her explanation of
David’s death. The pathologist concluded that David was the victim of homicidal violence.
            Appellant’s daughter, Tonya Smoot, later gave a statement to investigators in which she stated
that her mother became enraged at David, that she heard her beating him in the bathroom and that
shortly thereafter she found his body in the garage. At trial, Smoot told the jury that she did not
remember giving the statement and that the statement was untrue. 
 
Impeachment of Smoot
            In her first issue, Appellant insists the trial court erred in allowing the jury to hear Smoot’s
recorded statement without first impeaching her as required by Texas Rule of Evidence 613, which
provides as follows:
 
(a) Examining Witness Concerning Prior Inconsistent Statement. In examining a witness
concerning a prior inconsistent statement made by the witness, whether oral or written, and before
further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the
witness must be told the contents of such statement and the time and place and the person to whom it
was made, and must be afforded an opportunity to explain or deny such statement. If written, the
writing need not be shown to the witness at that time, but on request the same shall be shown to
opposing counsel. If the witness unequivocally admits having made such statement, extrinsic evidence
of same shall not be admitted. This provision does not apply to admissions of a party-opponent as
defined in Rule 801(e)(2).


Tex. R. Evid. 613(a).
            When asked by the prosecutor if she recalled giving a statement to Langford, Smoot testified
that at the time she was supposed to have made the statement indicating that her mother had beaten
David to death, she was pregnant, she had been taking lots of narcotics, and she had no recollection
of making the statement. The prosecutor again asked her if she remembered giving Langford a
statement about David’s disappearance. After Smoot again denied any recollection of having made
such a statement, the State called Langford to testify about the circumstances surrounding Smoot’s
making the statement. The statement was then played for the jury. Smoot acknowledged that she had
been provided a copy of the statement and had listened to it before it was introduced at trial.
            The purpose of the threshold requirements of Rule 613 is to put the witness on notice as to
which statements are going to be used to impeach his or her credibility. Joseph v. State, 960 S.W.2d
263 (Tex. App.–Houston [1st Dist.] 1998, pet. ref’d). The predicate requires that the witness first be
asked if he or she made the contradictory or inconsistent statement at a certain place and time and to
a certain person. Huff v. State, 576 S.W.2d 645, 647 (Tex. Crim. App. 1979). As the rule provides,
if the witness admits having made the inconsistent statement, other evidence of the statement is not
admissible. Wood v. State, 511 S.W.2d 37, 43 (Tex. Crim. App. 1974). But if the witness denies
making the statement, it may then be proved by extrinsic evidence. Ellingsworth v. State, 487
S.W.2d 108, 112 (Tex. Crim. App. 1972).
            Appellant argues that Smoot’s tape-recorded statement when transcribed was twenty-two
pages in length and contained numerous declarations within the statement that she was not asked to
explain or deny. Appellant insists that since Smoot was not given the opportunity to explain or deny
the several specific declarations contained within her statement, the prosecution failed to establish
the predicate for its introduction into evidence. The fact that a statement contains portions which
might impeach a witness will not furnish the proper predicate for the admission of the entire
statement. Id. If the witness admits making the written statement but upon inquiry denies portions
of the statement, then the portion that contradicts the witness and only that portion may be proven
for the purpose of impeachment. Id. The prosecutor provided Smoot a copy of her prior statement
and asked her if she had made the statement about David’s disappearance to Langford on July 2, 2002
in the Crescent Heights Addition in Athens, Texas. Only after she denied any recollection of the
entire statement did the prosecutor call Langford to prove its content. The prosecution laid the proper
predicate. Appellant’s issue is without merit and is overruled.
 
Appellant’s Tape-Recorded Statement
            In her second issue, Appellant complains that the trial court erred in allowing the State to
introduce the first of her three tape-recorded statements. Appellant was in jail on an unrelated charge
when Langford first questioned her about David’s disappearance and took the first tape-recorded
statement. Since she was in custody, Appellant argues the statement was the product of custodial
interrogation and that she did not knowingly and voluntarily waive her right against self-incrimination. Therefore, Appellant contends her statement was taken in violation of Article 38.22
of the Texas Code of Criminal Procedure, which provides in pertinent part as follows:
 
Sec.3. (a). No oral or sign language statement of an accused made as a result of custodial interrogation
shall be admissible against the accused in a criminal proceeding unless:
 
(2) prior to the statement but during the recording the accused is given the warning in
Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any
rights set out in the warning;


Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (Vernon 2001).
            Before questioning Appellant, Langford read her the warnings required by Article 38.22. 
Appellant initially failed to respond directly. Officer Nutt asked Appellant again whether she had
heard Langford read her rights or if she needed to have them read again. Appellant responded that
she had heard Langford read them and indicated that she understood them.
            Langford then asked Appellant if she wished to waive those rights and speak to them. 
Appellant said she did not know what to do, but began talking about the well. Officer Nutt said,
“Okay, but by your saying that you’d go with us, I’m assuming that you’re going to waive your rights
to an attorney at this time and want to talk to us and tell us what happened.” Appellant responded
“yes” and accompanied the officers to show them the well where later David’s body was found.
            Appellant initially gave equivocal responses as to whether she wished to waive her rights and
speak with them. When a suspect’s desires are expressed in an equivocal fashion, it is permissible
for a questioning officer to make further inquiry to clarify the suspect’s wishes. Nash v. Estelle, 597
F.2d 513, 517 (5th Cir. 1979). Law enforcement officials are only required to cease questioning a
suspect when he invokes the right in an unambiguous manner. Dowthitt v. State, 931 S.W.2d 244,
257 (Tex. Crim. App. 1996). Appellant said she understood her rights and waived them before the
officers allowed her to accompany them to the cistern where David’s body was found. Appellant’s
interrogators complied with Article 38.22, and the trial court did not err in allowing her statement into
evidence. Appellant’s second issue is overruled.
 
Appellant’s Oral Statements
            In her third issue, Appellant contends the trial court erred in allowing Langford to testify
about oral statements Appellant made while in custody. Langford testified that after hearing rumors
of David’s death and learning that Appellant was in jail (on an unrelated charge), she brought
Appellant into her office “to ask where David was.” The prosecutor then elicited the following
testimony from Langford on direct examination:
 
PROSECUTOR: And when you asked Ms. Voisin about where David was, what types of information
did she give you at that time?
 
LANGFORD: When she come in - - and I believe Ranger Foster was in that day. Anyway, I advised
her that I’m hearing a rumor, and she immediately said I know that David’s in the well, and she said
that that was the rumor, that he was basically with the family.
 
PROSECUTOR Okay. And at that time Jeannie Voisin told you that basically the rumor wasn’t true
and that David was in fact with the family?
 
LANGFORD: Yes.
 
PROSECUTOR: And did Ms. Voisin at that time give a name or any information about who the family
members were that David Voisin was suppose to be with?
 
LANGFORD: I asked her who, and she could remember J.E. and Dorothy, and she couldn’t remember
their last name. It was David and his brother Jackie’s family.


Appellant argues that the statements were the product of custodial interrogation and that the trial
court erred in admitting evidence of the statements through Langford’s testimony absent a showing
that the State had complied with Article 38.22 of the Code of Criminal Procedure. Appellant argues
that it is irrelevant that when she was first questioned, she was not a suspect in the murder or that the
officers did not even know a crime had been committed.
            In order to preserve her complaint on appeal, Appellant must make a timely objection to the
trial court and obtain the trial court’s ruling thereon. Ex parte Bagley, 509 S.W.2d 332, 333 (Tex.
Crim. App. 1974); Tex. R. App. P. 33.1. Appellant failed to object at trial to the questions and
answers she now challenges. Nothing is preserved for review. Appellant’s third issue is overruled.
 
Disposition
            The judgment of the trial court is affirmed.
 
 
 
                                                                                                    BILL BASS 
                                                                                                            Justice
 
 
 
 
Opinion delivered June 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.








(DO NOT PUBLISH)