Opinion Issued: November 5, 2009






 









In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00699-CR

 01-08-00700-CR

 01-09-00157-CR






JOSHUA JERMAINE JULIUS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 10th District Court

Galveston County, Texas

Trial Court Cause Nos. 07CR0342; 07CR1775; 07CR1774




 



MEMORANDUM OPINION

 Appellant, Joshua Jermaine Julius, appeals a judgment that convicts him for the
murder of Jarian Garrett; for aggravated assault on Jamel Washington; and, for
burglary of a habitation. (1) Appellant pleaded not guilty to the three offenses before
a single jury. The jury found him guilty and the court determined his sentence at 25
years in prison for each of the offenses to run concurrently. In three issues, appellant
contends that his trial attorney rendered ineffective assistance of counsel; that the
accomplice witness testimony is insufficient to support his conviction; and that the
non-accomplice evidence is insufficient to support his convictions. We conclude that
appellant's trial counsel did not render ineffective assistance of counsel, and that the
evidence is sufficient to support appellant's convictions. We affirm.

Background

 One early morning in January 2007, several men, including appellant and
Jamaal Lewis (hereinafter "Jamaal"), raided a house occupied by Jarian Garrett and
Jamel Washington, the complainants. 

 Darron Lewis (hereinafter "Darron"), the older brother of appellant's
accomplice, Jamaal, said that several hours before the shooting, appellant and Tim
Campbell discussed purchasing ammunition. Darron, appellant, Campbell, and
Campbell's friend, an unidentified African-American male, then went to Wal-Mart
to purchase ammunition. Darron stated that upon arriving at Wal-Mart, the group
initially split up. Darron and appellant first looked at air mattresses, while Campbell
and his friend went directly to the ammunition counter. After looking at mattresses,
Darron and appellant joined Campbell and his friend. Campbell asked Darron to buy
the ammunition because Campbell did not have the identification needed to purchase
ammunition. Darron purchased 7.62 x 39 millimeter AK-47 ammunition. Darron
said that appellant also looked at ammunition, but decided not to purchase any
because he said it was too expensive. A Wal-Mart surveillance camera recorded the
ammunition purchase. The camera taped Darron, appellant, Campbell, and
Campbell's friend, purchasing AK-47 ammunition. 

 Later that evening, appellant and several other men raided a house occupied by
Garrett and Washington. The initial assault occurred while Garrett and Washington
were sleeping, and occurred so quickly that Washington was shot before he woke up. 
When he eventually awoke wounded, Washington saw two of the assailants, Jamaal
and Williams. Jamaal had a handgun and was standing by the back room, while
Williams had an AK-47 and was standing directly above him. When Williams notice
Washington was awake, he shot him, causing Washington to black out. Washington
then woke up again, so Williams shot him an additional time. However, this time, he
stuck the muzzle of the AK-47 in Washington's mouth. When he fired, Washington
jerked his head, resulting in a bullet wound to Washington's neck. Washington
blacked out again, and when he awoke he heard Williams tell the other assailants to
get out of the house because Williams was "fixing to shoot the whole house up" with
his AK-47. After William's announcement, several men left the back room. 
Appellant was one of those men. Washington saw him run out of the back room into
the living room, shoot Garrett multiple times with a handgun, and exit the house. 
Although appellant wore a hood over his head, Washington was able to distinguish
appellant from the other assailants because of appellant's skin condition that caused
white spotting on this face and body. Before exiting the house, Williams shot Garrett
again, and then turned the gun on Washington, shooting him too. In all, Washington
was shot 22 times, but survived. Garrett was shot six times and died.

 One of the men who helped raid the house was Jamaal. At trial, Jamaal
testified against appellant as an accomplice witness. Jamaal explained that he,
appellant, Williams, Tim Campbell, and Elmo Flowers decided to rob Garrett of drugs
and money at Garrett's house after appellant and Campbell proposed the idea. Jamaal
testified that appellant and Campbell supplied the two AK-47s used in the shooting.
When the group arrived at Garrett's house, they tried to kick-in Garrett's door. When
this failed, the group broke the locks by firing on the door with AK-47s. Once inside,
Jamaal ran directly to the back room looking for drugs, while appellant and the other
accomplices initially stayed in the living room where Garrett and Washington were
located. While in the back room, Jamaal heard multiple gunshots come from the
living room. After the raid, appellant told Jamaal he shot Garrett. Appellant also
helped the other men get rid of evidence by having them dispose of their clothes at
a hotel.

 At trial, the State presented testimony of Washington, Jamaal, Darron, 
Garrett's mother, a medical examiner, a crime scene investigator, and the Wal-Mart
surveillance video. Appellant called Garrett's two neighbors, his father, and
Washington's former girlfriend to testify. The two neighbors testified to hearing
multiple gunshots at Garrett's house the night of the shooting. Appellant's father
testified that appellant was with him at his house the night of the shooting. 
Appellant's father, however, acknowledged during cross-examination that he could
not say for certain what date appellant was with him at his house. Appellant did not
testify. The jury was instructed that because Jamaal was an accomplice, the jury
could not convict unless his testimony was corroborated by other evidence tending
to connect the defendant with the offense.Sufficiency of Non-Accomplice Testimony

 In his third issue, appellant challenges the sufficiency of the non-accomplice
evidence that establishes his guilt. The trial court instructed the jury that Jamaal was
an accomplice as a matter of law. Appellant contends that the purchase of the
ammunition at the Wal-Mart is too remote to connect appellant to the offense and that
Washington's testimony cannot be used as corroboration because it conflicts with
Jamaal's testimony.

 A. Applicable Law

 An accomplice witness is someone who participated before, during, or after the
commission of the crime that could be prosecuted for the offense with which the
defendant was charged. See Blake v. State, 971 S.W.2d 451, 454-55 (Tex. Crim.
App. 1998). Under the Texas accomplice-witness rule, a conviction cannot be had
on the testimony of an accomplice unless corroborated by other evidence that tends
to connect the defendant with the offense committed, and the corroboration is not
sufficient if it merely shows the commission of the offense. Tex. Code Crim. Proc.
Ann. art. 38.14 (Vernon 2005); Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim.
App. 1999) (en banc). The accomplice-witness rule creates a statutorily imposed
review that is not derived from federal or state constitutional principles defining the
legal and factual-sufficiency standards. Brown v. State, 270 S.W.3d 564, 567 (Tex.
Crim. App. 2008).

 In conducting a sufficiency review under the accomplice-witness rule, we
eliminate the testimony of the accomplice witness from consideration. Castillo v.
State, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). We then examine the testimony
of other witnesses to ascertain whether the non-accomplice evidence tends to connect
the accused with the commission of the offense. Id. We view the corroborating
evidence in the light most favorable to the finding of guilt. Torres v. State, 137
S.W.3d 191, 196 (Tex. App.--Houston [1st Dist.] 2004, no pet.); Cantelon v. State,
85 S.W.3d 457, 461 (Tex. App.--Austin 2002, no pet.). The non-accomplice
corroborating evidence need not be sufficient itself to establish the accused's guilt
beyond a reasonable doubt. Castillo, 221 S.W.3d at 691. Additionally, the
corroborating evidence need not directly link the accused to the commission of the
offense. Id. 

 Mere presence of a defendant at the scene of the crime is insufficient to
corroborate accomplice witness testimony. Dowthitt v. State, 931 S.W.2d 244, 249
(Tex. Crim. App. 1996). However, evidence of the presence of the accused in the
company of the accomplice, coupled with other suspicious circumstances, is proper
corroborating evidence. McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App.
1997). The court may examine all facts and circumstances to determine whether an
accomplice's testimony is corroborated. Munoz v. State, 853 S.W.2d 558, 560 (Tex.
Crim. App. 1993) (en banc). Even apparently insignificant incriminating
circumstances may sometimes afford satisfactory evidence of corroboration. 
Dowthitt, 931 S.W.2d at 249. If the combined weight of the non-accomplice evidence
tends to connect the defendant to the offense, the requirement of article 38.14 has
been fulfilled. Gosch v. State, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991).

 B. Non-Accomplice Evidence Sufficient

 In this case there is sufficient non-accomplice evidence that tends to connect
appellant to the offense. Washington, the surviving victim, testified. His testimony
directly links appellant to the death of Garrett. Washington testified that appellant
was among several individuals who stormed Garrett's house. He testified that
appellant shot Garrett "two to three" times. Washington positively identified
appellant, remarking that appellant had a skin condition that left white spots on his
face and body. 

 Because Washington positively identified appellant as one of the assailants
who stormed the house and shot Garrett, that is sufficient to tend to connect appellant
to the commission of the offense. See Gosch, 829 S.W.2d at 777. After eliminating
the accomplice witness testimony from our consideration and examining the non-accomplice evidence, we conclude that the non-accomplice evidence tends to connect
appellant to the offense sufficiently to corroborate Jamaal's accomplice testimony. 
We hold the evidence is sufficient to meet the corroboration requirements of the Code
of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.14; Rios v. State,
263 S.W.3d 1, 7 (Tex. App.--Houston [1st Dist.] 2005, pet. dism'd) (victim's witness
testimony that assailants wore masks added to circumstances that tended to connect
appellant to the offense sufficiently to corroborate accomplice testimony). We need
not address whether the purchase of the ammunition is also evidence that tends to
connect appellant to the offense because Washington's testimony, alone, is sufficient.

 We overrule appellant's third issue for all three appeals.

Legal Sufficiency of Evidence

 In his second issue, appellant contends the "accomplice witness'[s] testimony
[is] insufficient to support conviction." Appellant's entire argument is, 

As stated from the record, [a]ccomplice did not witness the [a]ppellant
shoot the [d]ecedent. The [a]ccomplice, while testifying[,] changed his
version of how the [a]ppellant arrived at [the] house of the [d]ecedent
three times. Further, it m[ust] be called into question the obvious, glaring
disparity between the [a]ccomplice listing three additional co-defendants
in direct from confrontation [sic] from testimony of the [w]itness
Washington, who names three other completely different individuals.

We construe appellant's argument as a legal sufficiency challenge. See Rischer v.
State, 85 S.W.3d 839, 843 (Tex. App.--Waco 2002, no pet.) (where defendant does
not specify whether his challenge to evidence is factual or legal, appellate court may
construe general sufficiency challenge as challenge to only legal sufficiency of
evidence); Markey v. State, 996 S.W.2d 226, 229 (Tex. App.--Houston [14th Dist.]
1999, no pet.). 

 A. Law Pertaining to Legal Sufficiency

 In a legal sufficiency review, we consider the entire trial record to determine
whether, viewing the evidence in the light most favorable to the verdict, a rational
jury could have found the accused guilty of all essential elements of the offense
beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct.
2781, 2788-89 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App.
2005). The jurors are the exclusive judges of the facts, the credibility of the
witnesses, and the weight to give their testimony. Margraves v. State, 34 S.W.3d
912, 919 (Tex. Crim. App. 2000). A jury is entitled to accept one version of the facts
and reject another, or reject any part of a witness's testimony. Id. In conducting our
review of the legal sufficiency of the evidence, we do not reevaluate the weight and
credibility of the evidence, but ensure only that the jury reached a rational decision. 
Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). In reviewing the
evidence, circumstantial evidence is as probative as direct evidence in establishing
the guilt of an actor, and circumstantial evidence alone can be sufficient to establish
guilt. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). On appeal, the
same standard of review is used for both circumstantial and direct evidence cases. 
Id. 

 A challenge of insufficient evidence to support the verdict is not the same as
a challenge of insufficient corroboration. Utomi v. State, 243 S.W.3d 75, 80 (Tex.
App.--Houston [1st Dist.] 2007, pet. ref'd), cert. denied, 128 S. Ct. 2058 (2008). We
consider accomplice and non-accomplice evidence in deciding whether evidence is
legally sufficient. See Rios, 263 S.W.3d at 7 (using both accomplice and non-accomplice evidence to determine legal sufficiency of evidence). 

 B. Elements of the Offenses

 Under Texas Penal Code section 19.02(b)(1), a person commits murder if he
intentionally or knowingly causes the death of an individual. See Tex. Penal Code
Ann. § 19.02(b)(1) (Vernon 2003). A person commits aggravated assault, under
Texas Penal Code section 22.02(a), if he either intentionally or knowingly causes
serious bodily injury to another or he intentionally or knowingly causes bodily injury
to another with the use of a deadly weapon. See id. § 22.02(a)(1)-(2) (Vernon Supp.
2009). A person acts intentionally with respect to a result of his conduct when it is
his conscious objective or desire to cause the result. See id. § 6.03(a) (Vernon 2003). 
A person acts knowingly with respect to a result of his conduct when he is aware that
his conduct is reasonably certain to cause the result. See id. § 6.03(b). 

 A person commits burglary when he, without the effective consent of the
owner, enters a building or habitation and commits or attempts to commit a felony,
a theft, or an assault. See id. § 30.02(a)(3) (Vernon 2003). A person commits theft
when he unlawfully appropriates property with intent to deprive the owner of the
property. See id. at § 31.03(a) (Vernon Supp. 2009).

 C. Sufficiency of Evidence Analysis

 Viewing the evidence in a light most favorable to the jury's verdict, the record
shows that appellant was one of the men who raided Garrett's house the night of the
shooting, that he shot Garrett, and that he helped purchase ammunition for the raid
just hours before the raid occurred. 

 Appellant contends the evidence is insufficient to show appellant shot Garrett. 
However, both Washington and Jamaal testified that appellant was one of the men
who stormed Garrett's house and shot Garrett. Washington identified appellant
because of white spotting on appellant's skin, and he noted how appellant shot
Garrett "two to three" times. Jamaal specifically testified that appellant was one of
the men who helped raid the house, and who later told Jamaal that he shot Garrett. Additionally, Darron testified that appellant helped purchase 7.62 x 39
millimeter AK-47 ammunition before the shooting. He testified that it was at
appellant's insistence they buy the ammunition, and he testified that appellant was
there in the Wal-Mart at the ammunition counter when he purchased the ammunition. 
A Wal-Mart surveillance video demonstrated that appellant was at Wal-Mart,
shopping for and helping Darron purchase ammunition approximately nine hours
before the shooting. The crime scene investigator, Officer Mora, also testified that
Garrett's door and house were riddled with bullets and covered with multiple 7.62 x
39 and .380 millimeter shell casings.

 Appellant further contends the evidence is insufficient because Jamaal changed
his testimony regarding how appellant arrived at the house. Prior to trial, Jamaal
made a statement to the police in which he said appellant was not in the house during
the raid. At trial, Jamaal testified that appellant entered the house during the raid, and
was one of the men who shot Garrett. When asked why his testimony differed from
his original statement, Jamaal explained that he initially covered up for appellant
because he knew appellant and his brother were close friends. Jamaal stated that he
later decided to tell the truth because he felt badly that a person was dead as a result
of appellant's actions. 

 Finally, appellant asserts that the evidence is insufficient because there were
inconsistencies between statements by Washington and Jamaal regarding which men
stormed Garrett's house. When Washington gave his initial statement to police after
the shooting, he listed appellant, Jamaal, Williams, Alfred Spurlock, Chris Spurlock,
and Jeremy Jones as the men who raided Garrett's house. Washington later said he
could not be sure that Alfred, Chris, and Jones were involved. At trial, Washington
stated that he could only identify appellant, Jamaal, and Williams as part of the group
that stormed the house. 

 Jamaal, on the other hand, stated prior to trial that appellant was not one of the
men who stormed his house. Jamaal later changed his statement, and testified that
appellant was one of the men, and that he initially did not identify appellant because
he was trying to protect him from prosecution. At trial, he testified that he, appellant,
Williams, Campbell, and Flowers were the men who raided Garrett's house. 

 Although the initial statements by Washington and Jamaal differed, their
testimony at trial concerning appellant was the same. Both testified that appellant,
Jamaal, and Williams were three of the men who raided Garrett's house. Washington
testified that he did not know for sure who the other men were, besides those he
identified. Jamaal testified that two of those men were Campbell and Flowers. Both
testimonies identified appellant as one of men who shot Garrett.

 When the evidence is viewed in the light most favorable to the jury's verdict,
the logical force of the total combined evidence shows that a jury could reasonably
find beyond a reasonable doubt that appellant shot Garrett, and was one of the several
men who raided Garrett's house. See Vodochodsky, 158 S.W.3d at 509. We,
therefore, hold the evidence is legally sufficient to prove that appellant intentionally
or knowingly caused the death of Garrett. See Tex. Penal Code Ann. § 19.02(b)(1). 
We further hold that the evidence was legally sufficient to prove that appellant
intentionally or knowingly threatened Washington with imminent bodily injury by
pointing a firearm at Washington. See Tex. Penal Code Ann. §§ 22.02(a)(1)-(2). 
Finally, we hold that the evidence was legally sufficient to show he entered the
habitation of Washington and committed a felony. See id. § 30.02(a)(3).

 We overrule appellant's second issue for all three appeals.

Ineffective Assistance of Counsel

 In his first issue, appellant contends that trial counsel's representation was
ineffective because trial counsel (1) failed to introduce impeachment evidence against
accomplice witness Jamaal and (2) failed to timely object to the Wal-Mart in-store
video of the ammunition purchase.

 A. Applicable Law

 To prevail on a claim of ineffective assistance of counsel, the appellant must
show that his trial counsel's performance was deficient and that a reasonable
probability exists that the result of the proceeding would have been different. 
Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068
(1984). The first prong of the Strickland test requires that the defendant show that
counsel's performance fell below an objective standard of reasonableness. Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Thus, the defendant must prove,
by a preponderance of the evidence, that trial counsel's representation objectively fell
below professional standards. Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002). The second prong requires the defendant to show a reasonable probability
that, but for his counsel's unprofessional errors, the result of the proceeding would
have been different. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Thompson,
9 S.W.3d at 812. Because the reviewing court must, however, indulge a strong
presumption that counsel's conduct falls within the wide range of reasonable
professional assistance, the defendant must overcome the presumption that, under the
circumstances, the challenged action "might be considered sound trial strategy." 
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. 

 Any allegation of ineffectiveness must be firmly founded in the record, which
must demonstrate affirmatively the alleged ineffectiveness. Thompson, 9 S.W.3d at
813 (citing McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). We
will not speculate to find trial counsel ineffective when the record is silent on
counsel's reasoning or strategy. See Jackson v. State, 877 S.W.2d 768, 771 (Tex.
Crim. App. 1994); Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.--Houston [1st
Dist.] 1996, no pet.). In rare cases, however, the record can be sufficient to prove that
counsel's performance was deficient, despite the absence of affirmative evidence of
counsel's reasoning or strategy. See Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex.
Crim. App. 2000). Such cases are limited to occasions where no reasonable attorney
could have made such a decision. Weaver v. State, 265 S.W.3d 523, 538 (Tex.
App.--Houston [1st Dist.] 2008, pet. ref'd). 

 Appellant did not file a motion for new trial, which would have afforded trial
counsel an opportunity to explain her strategy, and no direct evidence in the record
establishes why appellant's attorney acted as she did. We therefore presume that
counsel had a plausible reason for her actions. See Thompson, 9 S.W.3d at 814. We
review the record to determine whether this is one of those rare cases where no
reasonable attorney could have made the decisions complained of in this appeal. See
id. 

 B. Analysis of Lack of Witness Impeachment

 Appellant contends he received ineffective assistance when his trial counsel did
not offer into evidence a prior inconsistent statement by Jamaal, the accomplice
witness. (2) 

 The proper predicate for impeachment by a prior inconsistent statement
requires that the witness first be asked if he made the contradictory statement at a
certain place and time, and to a certain person. Huff v. State, 576 S.W.2d 645, 647
(Tex. Crim. App. 1979). If the witness denies making the contradicting statement,
it can then be proved by the prior inconsistent statement. Id. If, however, the witness
admits to the prior inconsistent statement, the prior statement is not admissible. Id.

 At trial, appellant's trial counsel cross examined Jamaal about inconsistencies
between his prior statement and his trial testimony. During cross examination,
appellant's trial counsel showed Jamaal his statement and asked him to read it. The
State objected, stating this was improper. The trial court agreed, stating, "It is
improper. It is not admitted into evidence. You can use it for impeachment purposes. 
However, you cannot have him read it to the jury." Appellant's trial counsel then
asked Jamaal several questions concerning the inconsistencies between his former
statement and his later testimony. Jamaal admitted to the inconsistencies. He stated
the reason behind the inconsistencies was that he initially tried to protect appellant
by not identifying him in his earlier statement. Because Jamaal admitted to making
the prior inconsistent statements, the statements would not have been admissible. See
id. 

 Appellant contends his attorney was ineffective for not attempting to admit
inadmissible statements. We disagree with this contention because an attorney's
failure to take a frivolous action does not constitute ineffective assistance of counsel. 
See Cooper v. State, 707 S.W.2d 686, 689 (Tex. App.-- Houston [1st Dist.] 1986,
pet. ref'd).

 C. Analysis of Admission of Surveillance Video

 Appellant contends his trial counsel should have moved to exclude the in-store
Wal-Mart video of the ammunition purchase because the video was more prejudicial
than probative. He contends that because his trial counsel failed to object to the
video, he received ineffective assistance of counsel.

 Appellant asserts that the video was prejudicial because the State relied heavily
on the video to support the State's law of parties theory. Appellant notes testimony
that he did not personally purchase the ammunition, and asserts the Wal-Mart
ammunition was not the same ammunition used in the shooting. Appellant claims
that excluding the video from evidence would have damaged the credibility of
Jamaal's accomplice testimony.

 For trial counsel to be rendered ineffective for not objecting to the video,
appellant must show that, had his counsel objected to the evidence, the trial court
would have erred in overruling his counsel's objection. See Vaughn v. State, 931
S.W.2d 564, 566 (Tex. Crim. App. 1996) (en banc). To object that the video was
more prejudicial than probative, trial counsel would have had to object under Rule
403 of the Texas Rules of Evidence. Rule 403 provides that relevant evidence "may
be excluded if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury . . . ." Tex. R. Evid. 403. 
The Court of Criminal Appeals has identified a non-exclusive list of factors to apply
in making a rule 403 analysis. See Reese v. State, 33 S.W.3d 238, 240-41 (Tex.
Crim. App. 2000). These factors include, but are not limited to, 

(1) how probative the evidence is; 

(2) the potential of the evidence to impress the jury in an irrational but
indelible way;

(3) the time the proponent needs to develop the evidence; and

(4) the proponent's need for the evidence.


Id. 

 Under the first Reese factor, the video was probative because it showed
appellant present at an ammunition purchase several hours before being identified at
the shooting by another witness. The video shows appellant, Darron, Campbell, and
another unidentified man at the ammunition counter talking to the sales
representatives. It shows appellant shopping for the ammunition. The video then
shows Darron purchasing the ammunition with appellant and Campbell at the counter. 
The video also supported Darron's testimony that appellant went to Wal-Mart to
purchase ammunition. 

 The second factor requires that we examine the potential of the video to
impress the jury in an irrational but indelible way. The videotape visually shows
what Darron described in his testimony. The evidence from the surveillance camera
would not impress the jury in an irrational and indelible way because it documents
the preparation leading up to the shooting. 

 The third factor concerns the time that the proponent needs to develop the
evidence. The record indicates that the surveillance video was short, and that it took
relatively little time to develop the evidence. 

 The fourth factor, the need for the evidence, would also support a trial court's
ruling to admit the evidence. The State used the evidence to support one of its non-accomplice witnesses. 

 Under the factors identified in Reese appellant fails to show that, had
appellant's trial counsel objected to the admission of the video, the trial court would
have erred in overruling his counsel's objection. See Vaughn, 931 S.W.2d at 566. 
It is well-established that failure to object to admissible evidence does not constitute
ineffective assistance of counsel. See Cooper, 707 S.W.2d at 689.

 Appellant does not meet the first prong of Strickland because he has failed to
show that his counsel's performance fell below an objective standard of
reasonableness. See Mitchell, 68 S.W.3d at 642; Thompson, 9 S.W.3d at 812. We
hold appellant has failed to show he received ineffective assistance of counsel. 

 We overrule appellant's first issue for all three appeals.


Conclusion

 We affirm the judgment of the trial court.


 


 Elsa Alcala

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).
1. The murder is appellate cause number 01-08-00699-CR, which is trial cause number
07CR0342. The aggravated assault is appellate cause number 01-08-00700-CR, which is
trial cause number 07CR1775. The burglary is appellate cause number 01-09-00157-CR,
which is trial cause number 07CR1774.
2. Appellant also complains that his trial counsel failed to offer a prior inconsistent statement
against Washington. However, appellant fails to demonstrate where in the record this occurs,
and fails to discuss the issue besides the statement that "at no time did Defense counsel offer
the written or recorded statements of the [sic] neither Witness nor Accomplice." 
Furthermore, appellant fails to offer any argument, theory, or authority regarding how trial
counsel was ineffective in her questioning of Washington. Texas Rules of Appellate
Procedure require appellant's brief to "contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record." Tex. R. App.
P. 38.1(i); Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005) (holding if an
argument is inadequately briefed, there is nothing for the appellate court to review).