*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# MEMORANDUM OPINION

Nos. 04-11-00489-CR, 04-11-00490-CR

Gloria **GAMEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR10780B
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:       Sandee Bryan Marion, Justice
               Rebecca Simmons, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  August 15, 2012

AFFIRMED

Appellant Gloria Gamez was convicted of the kidnapping and murder of Herman Diaz and the kidnapping of C.C.[1] She was sentenced to life imprisonment for the murder of Diaz and fifty years on each of the kidnapping charges—all sentences to run concurrently. Gamez filed a motion for new trial contending her Sixth Amendment right to confront witnesses was violated. The court denied the motion. Gamez raises two issues on appeal: the trial court erroneously

---

[1] To protect the identity of the victim, we will use the initials "C.C." throughout the opinion.

prohibited effective cross-examination of a witness by excluding the witness's video-recorded statement, and the trial court abused its discretion in refusing to admit the recording under Texas Rule of Evidence 613. We affirm the trial court's order denying Gamez's motion for new trial.

## BACKGROUND

On October 23, 2007, workers found a dead body under a highway bridge. Based on the corpse's fingerprints, police were able to identify the victim as Herman Diaz. The police determined the cause of death to be homicide, and Detective Sean Johnson's investigation of the crime led him to believe Gloria Gamez and C.C. were connected to Diaz's death. However, police were unable to immediately locate either woman. Several months after Diaz's body was found, an emergency 911-call from C.C. led the police to both women and resulted in Gamez's arrest for the kidnapping and murder of Diaz and the kidnapping of C.C.

At Gamez's trial, C.C. testified about her relationship with Gamez and the events surrounding the crimes. C.C. and others sold drugs for Gamez. Several days before Diaz was kidnapped, Gamez claimed someone had stolen approximately $30,000.00 from her home. When Diaz went to purchase drugs from Gamez, Gamez accused him of stealing the money. She ordered Jerry Mello, one of her drug dealers, to restrain Diaz. Gamez then instructed several people to beat and torture Diaz. Gamez also restrained C.C. after accusing her of aiding Diaz in stealing Gamez's money. C.C. explained to the jury in graphic detail how Gamez kidnapped, bound, beat, raped, and drugged her, and she explained how she managed to unbind herself after several months of captivity, find a phone, and dial 911. She also testified that Gamez was responsible for Diaz's kidnapping and murder.

Jerry Mello also testified as to his part in Diaz's kidnapping and beating. He stated that Gamez orchestrated the kidnapping and beating of Diaz and C.C. as retribution for the theft of the money.

Gamez's sister-in-law and fellow drug dealer, Emma Mello, corroborated Jerry's and C.C.'s testimony. Emma testified pursuant to a plea bargain with the State and admitted to her own drug use and involvement in the kidnappings. During the course of the investigation, Emma gave a video-recorded witness statement in the presence of Detective Johnson that, according to Gamez, was inconsistent with Emma's trial testimony. It is Emma's testimony and her video-recorded witness statement that form the basis of this appeal. Notably, Gamez did not attempt to impeach Emma with her witness statement while Emma was on the stand. Two days after Emma testified, Detective Johnson testified but was not questioned concerning any inconsistencies between Emma's testimony and the video-recorded witness statement. At the end of Johnson's cross-examination, Gamez attempted to introduce the video for impeachment purposes;[2] the State objected and the trial court sustained the objection "at this point." The trial court confirmed: "I will allow you certainly to ask Detective Johnson whatever questions you may need to ask him. And give you the latitude necessary to ask him based on the impeachment or the attempt to impeach Ms. [Emma] Mello yesterday."[3] Gamez, however, did not question Detective Johnson further.

After the jury found Gamez guilty on two counts of kidnapping and one count of murder, Gamez filed a motion for new trial alleging a Confrontation Clause violation. Gamez appeals the trial court's denial of her motion for new trial and the underlying judgment.

---

[2] Gamez originally sought to introduce the witness statement under Texas Rule of Evidence 801(e)(1)(A), but the witness statement was not given under oath so she turned to Rule 613(a) concerning prior inconsistent statements.
[3] Emma testified two days before Detective Johnson.

## RESTRICTION ON CROSS-EXAMINATION

Gamez asserts the trial court violated her Sixth Amendment right to confront a witness by not admitting into evidence Emma's video-recorded witness statement. She contends that Emma's testimony, secured by a plea bargain, bears little resemblance to her pre-plea bargain statement. Thus, she argues that the video would have shown Emma's inconsistent testimony and poor memory were a product of her plea bargain rather than her drug use. Gamez's attempt to turn her failure to properly impeach Emma into a constitutional error by the trial court fails under a simple examination of the Confrontation Clause. *See* U.S. CONST. amend. VI.

### A. Sixth Amendment

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." *Id.*; *accord Woodall v. State*, 336 S.W.3d 634, 641 (Tex. Crim. App. 2011). The right to confrontation is violated when appropriate cross-examination is limited. *Hurd v. State*, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987); *see Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause is not violated, however, where the accused is given an "*opportunity* for effective cross-examination." *Thomas v. State*, 837 S.W.2d 106, 112 (Tex. Crim. App. 1992) (per curiam); *see Carmona v. State*, 698 S.W.2d 100, 103–04 (Tex. Crim. App. 1985). An accused has the right to attack a witness's bias and motives in testifying; however the right is not unqualified—"the trial judge has wide discretion in limiting the scope and extent of cross-examination." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). The accused is not entitled to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Carmona*, 698 S.W.2d at 104.

## B.  The Trial Court Did Not Err

The trial court's exclusion of Emma's video-recorded witness statement did not violate Gamez's right to confront Emma, particularly because Gamez never sought to introduce any portion of the video while Emma was on the stand.  On direct examination, the State asked Emma about her reasons for testifying.  Emma admitted that she was testifying pursuant to a plea bargain that allowed her to serve a reduced sentence.  On cross-examination, Gamez asked Emma if the charges against Emma for the murder of Diaz had been waived or dismissed.  Emma confirmed that the murder charge had been dropped pursuant to her plea bargain.  The State did not object and the trial court did not limit Gamez's questioning of Emma concerning her bias in testifying for the State.  Gamez was also permitted, without objection by the State, to question Emma regarding her state of intoxication prior to and during Emma's statement to police and during the events that led to Gamez's arrest.  Emma was even questioned concerning an inconsistency between her trial testimony and her witness statement.  No attempt was made to introduce any inconsistent statement made in the video-recorded witness statement.

Under the circumstances, Gamez was given an opportunity for effective cross-examination to reveal Emma's bias and motive for testifying.  Thus, the court's exclusion of Emma's video-recorded police statement did not violate Gamez's right to confront Emma.  *See Thomas*, 837 S.W.2d at 112; *Carmona*, 698 S.W.2d at 104.

### PRIOR INCONSISTENT STATEMENT

Gamez also contends the trial court abused its discretion in excluding Emma's video-recorded statement under Texas Rule of Evidence 613.

## A. Standard of Review

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will "uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Id.*

## B. Prior Inconsistent Statements

Before extrinsic evidence of a witness's prior inconsistent statement is permitted on cross-examination, "the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement." TEX. R. EVID. 613(a); *Willover*, 70 S.W.3d at 846 n.8; *see Huff v. State*, 576 S.W.2d 645, 647 (Tex. Crim. App. [Panel Op.] 1979) (explaining the proper predicate for impeachment by a prior inconsistent statement).

In Gamez's appellate brief, she states that between Emma's statement to police and her testimony at trial, (1) Emma elevated her own involvement in Diaz's kidnapping, torture, and murder, and (2) Emma downplayed C.C.'s involvement in the crimes. Gamez argues on appeal that these inconsistencies between Emma's statement and her testimony at trial entitled Gamez to admit the video recording of Emma's statement to police under Rule 613. However, Gamez failed to lay the proper predicate required by Rule 613 to allow extrinsic evidence of Emma's alleged prior inconsistent statement. *See* TEX. R. EVID. 613(a); *Willover*, 70 S.W.3d at 846 n.8; *Huff*, 576 S.W.2d at 647. No attempt was made to use the video-recorded statement with Emma, and Emma was never warned that she made prior contradictory statements regarding her own involvement and C.C.'s involvement in the crimes. *See* TEX. R. EVID. 613(a); *Huff*, 576 S.W.2d at 647. Thus, Emma was not given an opportunity to explain any alleged inconsistencies

between her witness statement and her testimony. *See* TEX. R. EVID. 613(a); *Huff*, 576 S.W.2d at 647. Because Gamez failed to lay the proper predicate to admit Emma's video-recorded statement into evidence under Rule 613, the court did not abuse its discretion by excluding the video. *See Willover*, 70 S.W.3d at 846.

## CONCLUSION

Gamez's Sixth Amendment right to confront witnesses against her was not violated, and the trial court did not abuse its discretion in excluding a video-recorded witness statement. Accordingly, we affirm the trial court's judgment.

Rebecca Simmons, Justice

DO NOT PUBLISH